Betty P. PRUNEAU, and William E. Pruneau, her Husband, Plaintiffs-Respondents,

v.

Emil SMILJANICH, Defendant-Appellant.

No. 39289.

Missouri Court of Appeals, Eastern District, Division Four.

July 24, 1979.

Daniel J. McMichael, Fitzsimmons, Fitzsimmons, Clayton, for defendant-appellant.

Dana Hockensmith, Richard French, Thurman, Nixon, Smith, Howald, Weber & Bowles, Hillsboro, for plaintiffs-respondents.

DOWD, Presiding Judge.

Plaintiffs Betty and William Pruneau filed a three count petition in the Circuit Court of Jefferson County to recover damages for injuries sustained by Betty Pruneau in an automobile collision with defendant, Emil Smiljanich. The jury returned a verdict in favor of the defendant on all three counts. In Count I of the amended petition, plaintiff Betty Pruneau sought $10,000 as damages for injuries she sustained as a result of defendant's alleged negligence. In Count II, plaintiff William E. Pruneau sought $2,000 as damages for loss of his wife's consortium. In Count III, plaintiff William E. Pruneau sought $1,000 for property damages sustained by his vehicle. Plaintiffs filed a motion for new trial which was sustained by the court without specifying the grounds. Defendant appeals.

■ We must note at the outset that when a trial court orders a new trial without pronouncing the reasons therefore, the order is presumptively erroneous. *Haas Baking Company v. Luzio,* 512 S.W.2d 428 (Mo.App.1974). In such a case, the party to whom the new trial has been granted bears the burden of proving that the grant of a new trial was predicated on grounds presented in the motion for new trial. Rule 84.05(b); *State ex rel. State Hwy. Commission v. Gravois Farmers Club,* 483 S.W.2d 786 (Mo.App.1972); *Arstein v. Pallo,* 388 S.W.2d 877 (Mo.banc 1965).

Plaintiffs-Respondents contend that the court's grant of a new trial was not erroneous because the court erred in six respects in giving defendant's contributory negligence instruction to the jury. Instruction # 11, challenged in the plaintiffs' motion for a new trial, reads as follows:

"Your verdict must be for defendant on the claim of Betty P. Pruneau if you believe:

"First, plaintiff Betty P. Pruneau's automobile was stopped partially blocking the road and plaintiff Betty P. Pruneau failed to warn eastbound traffic of her car obstructing the road; and

"Second, plaintiff Betty P. Pruneau was thereby negligent; and

"Third, such negligence of plaintiff Betty P. Pruneau directly caused or directly contributed to cause any damage plaintiff Betty P. Pruneau may have sustained."

The record discloses that the accident occurred on Highway A in Jefferson County, Missouri. On the date of the collision, November 26, 1975 about 9 a. m., it was snowing and the two lane highway was snow covered. Mrs. Pruneau was driving east, accompanied by four of her fourteen children. The terrain of the stretch of highway at the scene of the accident was described as curving to the left forming the ascent to a small knoll, and then curving to the right forming the descent from the knoll.

While descending from the crest of the knoll, Mrs. Pruneau swerved to the right to avoid an oncoming car. Mrs. Pruneau skidded off the road, and part of her car landed in a ditch which was adjacent to the highway. When it came to a stop, the car was positioned with the front right passenger wheel in the ditch, the front left driver's wheel at the side of the highway, and the back portion of the car on the highway. The evidence regarding the degree to which the car protruded onto the highway is in dispute. Plaintiffs' evidence indicates that a small portion of the back end of the car encroached on the eastbound lane of Highway A. The defendant and his witnesses however, assert that 6–10 feet of plaintiff's car extended into the eastbound lane.

A young unidentified man attempted to assist Mrs. Pruneau in removing her car from the ditch. Although the attempt was unsuccessful, a school bus travelling in the eastbound lane negotiated around Mrs. Pruneau's car. Five or ten minutes later, defendant reached the crest of the knoll, and viewed the plaintiff's vehicle from approximately 50 feet away. Defendant applied his brakes, which locked, causing him to skid into the plaintiff's car. Defense witnesses estimated that defendant was travelling at a speed of 5–10 m p h at the time the collision occurred.

Shortly thereafter, a third car collided with the plaintiffs' and defendant's vehicles, but this second collision is not a part of this lawsuit.

Two days after the accident, the parties met with a highway patrolman to discuss the collision. Plaintiffs contend that defendant admitted to having "blanked out" during the accident. Defendant contends that Mrs. Pruneau informed the officer that she had not sustained any injury as a result of the collision. Mrs. Pruneau explained that her symptoms of neck pain, headache, nausea, dizziness and blurred vision appeared approximately three or four days after the accident.

In their first point relied on the Pruneaus contend that instruction # 11 was erroneous because it hypothesized that Mrs. Pruneau had an affirmative duty to warn eastbound travelers that her vehicle was obstructing a part of the highway.

As a general rule, a person who obstructs a roadway with his or her vehicle has a duty to remove it and warn other drivers of the possible hazard. Cases in which this rule has been addressed however, have also recognized the caveat that there are situations in which both these duties cannot be performed simultaneously. *Eastman v. Brackman*, 347 S.W.2d 126, 129 (Mo. 1961). We think this is such a case. Mrs. Pruneau was travelling with four children: a daughter, age 16; a daughter, age 14; a son, age 5; and a son, age 3. The Pruneau auto was in the ditch 5 to 10 minutes prior to the collision. During this time Mrs. Pruneau and her eldest daughter were actively attempting to extricate the auto from the ditch. We cannot say that Mrs. Pruneau's action in staying with the car, and not sending a child up the road on an overcast day to warn oncoming traffic, amounted to a breach of duty. Under the facts here we believe the evidence failed to establish a submissible case of contributory negligence as to a duty to warn by plaintiff. Accordingly, we hold it was error to give such an instruction.

The *Eastman* case supports plaintiff's position. In *Eastman,* supra, a case with a fact situation similar in many respects to the case here, plaintiff's sole theory submitted to the jury was that defendant was negligent in failing to go to the crest of the hill to warn approaching eastbound automobiles of the danger created by her automobile having slid into the ditch and partially blocking the eastbound lane of traffic. The court rejected defendant's duty to warn and using language applicable here, stated at p. 130:

"If the defendant Brackman had gone immediately to the top of the hill, had attempted to warn the eastbound motorist (by waiving her arms as the plaintiff says she should have), but had failed to stop him, and the plaintiff had been similarly injured, the plaintiff might then have as reasonably contended that the defendant should have first undertaken to move her car . . . ."

The same reasoning applies here.

We believe the instruction was erroneous and the trial court properly granted plaintiffs' motion for a new trial. Point I is ruled in favor of plaintiffs-respondents.

Because the case is remanded for a new trial it will not be necessary to discuss a number of other attacks on instruction # 11.

■ Next, defendant-appellant contends that the grant of a new trial as to all three counts of the petition was erroneous because instruction # 11 did not address Counts II and III. We disagree. Count II concerned William Pruneau's derivative claim of loss of consortium. A determination that Betty Pruneau was contributorily negligent would bar William Pruneau's recovery on his loss of consortium count. *Elmore v. Illinois Terminal Railroad Company,* 301 S.W.2d 44[8] (Mo.App.1957). As the instruction was erroneously given, we believe the instruction tainted the jury's determination of William's derivative claim.

■ The errors in instruction # 11 also had an adverse effect on the jury's consideration of Count III wherein the owner of the vehicle, William E. Pruneau sought damages for $1,000. This challenged instruction characterized Betty Pruneau as the owner of the automobile. This description is in conflict with the evidence and pleadings, and may have misled the jury in its consideration of the property damage issued.

■ Defendant-appellant also contends that the plaintiffs failed to make a submissible case on the question of damages, due to the absence of medical testimony establishing the causal relationship between the accident and the injuries sustained. Our standard of review of such an issue is one in which we consider all the evidence favorable to the plaintiffs, drawing all reasonable inferences therefrom in plaintiffs' favor. *Schmittzehe v. City of Cape Girardeau,* 327 S.W.2d 918 (Mo.1959).

■ Plaintiff's evidence revealed that her symptoms of headache, back pain, visual impairment and nausea appeared three or four days after the accident. Soon thereafter, she consulted a physician, Dr. Deles, and was hospitalized for tests. Her hospital records contained the notation that her symptoms were related to post concussion headaches.

The element of causation may be established in the absence of medical testimony, if the injury suffered may be categorized as one of "sudden onset". This latter term has been interpreted as embracing those "cases where the physical disability develops coincidentally with the negligent act, such as broken bones . . ., immediate, continuing back pain . . ., or an obvious wound". *De Moulin v. Kissir,* 446 S.W.2d 162, 165 (Mo.App.1969). This latter case, relied upon by the defendant-appellant, was one in which the complaining party was denied recovery because she could not prove the sudden onset of her injuries following the defendant's alleged negligent act. The court held that the causation issue therein was not susceptible to the treatment accorded "sudden onset" cases because the plaintiff had waited seventeen months before seeking medical attention for her injury. This is not so extreme a case. Mrs.

Pruneau began to experience pain within three or four days of the accident. There was no evidence that this pain stemmed from a pre-existing condition or intervening cause. The combination of all these factors indicate that the injuries sustained by Mrs. Pruneau are more aligned with those found in "sudden onset" cases rather than those which are the apparent product of a gradual chronic disorder. *Parrot v. Kisco Boiler & Engineering Company*, 332 S.W.2d 41, 50 (Mo.App.1960). Accordingly, we rule this point against defendant-appellant.

Judgment affirmed.

CRIST and SATZ, JJ., concur.