Donna **PLASTER**, Employee–Appellant,

v.

**DAYCO CORPORATION**,
Employer–Respondent.

No. 15831.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 15, 1988.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Dec. 7, 1988.

Jack Hoke, Hoke & Miller, Springfield, for employee-appellant.

Raymond E. Whiteaker, John E. Price, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for employer-respondent.

GREENE, Judge.

Donna Plaster appeals from a final award of the Labor and Industrial Relations Commission of Missouri (Commission) which affirmed a decision of an administrative law judge that she was not entitled to permanent partial disability benefits which allegedly resulted from her on-the-job injury. The decision also held that while Plaster was entitled to temporary total disability payments as a result of such injury, her period of temporary total disability only extended from September 11, 1983, to January 25, 1984.

Plaster contends that the Commission's conclusion that she was not entitled to permanent partial disability benefits was based on an improper declaration of law, in that the Commission held that she, rather than the employer, was required to prove what percentage of her disability was due to a preexisting condition, and that because of her failure to do so, she was not entitled to permanent partial disability benefits. She also contends that the Commission's limitation of the time for which she should receive temporary total disability benefits to a period beginning September 11, 1983, and ending January 25, 1984, was not supported by competent and substantial evidence, and that she was entitled to such benefits for a period from September 11, 1983, until February 19, 1985.

The facts of the case are as follows. Donna Plaster had an extensive history of low back pain and related problems, which her treating physician, Dr. Ben Harmon, in 1973, indicated were due to degenerative disc disease in the fifth lumbar vertebrae area of her spine. It was the opinion of Dr. Harmon at that time that Plaster's job duties as a factory worker for the Dayco Corporation greatly aggravated her back condition. In September of 1976, after repetitive bouts of low back pain, Plaster underwent a right hemilaminectomy, during which a herniated fifth lumbar disc was found and removed. Prior to being released to return to work at Dayco following her surgery, Plaster suffered a reoccurrence of low back pain, but she returned to work. Her condition gradually worsened. In October of 1978, Dr. Harmon questioned the wisdom of her continuing with her work at Dayco, which work involved bending and lifting, and he "began recommending as strongly as [he] could that she change jobs." Plaster ignored Dr. Harmon's advice, and continued working at Dayco. Her back troubles continued, with frequent absences from work, and occa-

sional hospitalization because of back and leg pain.

On September 10, 1983, Plaster reinjured her back while lifting bundles of V-belts at the Dayco plant. Plaster was hospitalized by Dr. Harmon for treatment, following which Dr. Harmon, on January 25, 1984, concluded that Plaster was totally and permanently disabled from factory-type employment. This diagnosis was confirmed by an examining physician, Dr. Guy Perry. Dr. Harmon was of the opinion that Plaster had suffered from a "significant" disability since 1973 because of her back problems, and that, at the time of the hearing before the administrative law judge, which was in 1985, "she carried a PPD [permanent, partial disability] in the range of about 60%." Neither Dr. Harmon nor anyone else offered an expert opinion as to what percentage of the 60 percent permanent partial disability rating preceded the reinjury of Plaster's back.

■ Expert opinion evidence is necessary in order to prove the extent of a preexisting disability, so that such percentage can be evaluated against the disability percentage existing after the compensable injury, in order to determine what percentage of permanent partial disability is attributable to the job-related injury which is the basis for the worker's compensation claim. It was Plaster's duty to offer such testimony if she hoped to recover anything for any additional disability incurred by reason of the job related injury that she suffered on September 10, 1983. Her failure to do so bars her from recovering permanent partial disability benefits. *Griggs v. A.B. Chance Company*, 503 S.W.2d 697, 704–705 (Mo. App.1973). *See also* Mo. Workers' Compensation Law, § 3.21 (Mo.Bar 1969), and cases cited therein.

■ Plaster seeks to avoid application of the *Griggs* doctrine to this case by contending that she had not suffered from a preexisting disability, but merely had a "preexisting but nondisabling condition, inherent weakness, or bodily defect." Such a desig-

nation of her prior condition is a play on words that is at odds with the facts. The administrative law judge heard competent and substantial evidence, including testimony by the treating physician, Dr. Harmon, that Plaster had a "significant" disability prior to September 10, 1983, and that "employee's preexisting disability was such that he had recommended to the employee that she not return to her previous occupation at Dayco."

This evidence established that Plaster had a preexisting industrial disability that decreased her earning capacity as a factory worker, which disability predated the incident which aggravated such disability. *Stoddard v. Wilson Freight Inc.*, 651 S.W. 2d 152, 158 (Mo.App.1983); *Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 921 (Mo.App.1982).

Plaster's remaining contention is that she was entitled to temporary total disability benefits for a period from September 10, 1983, through February 19, 1985, rather than from September 10, 1983, through January 25, 1984, as found by the administrative law judge and affirmed by the Commission. She bases her argument on an entry in her medical records dated February 19, 1985, that on that date she had "no localizing neurologic signs." Plaster's attorney has not explained the legal significance of that entry, but asserts that the meaning of such phrase is that no further progress was expected, and her healing period was at an end, as of that date.

■ It is not within our province to speculate as to the legal significance of the words in question. Even if we did, and felt that such entry was possibly evidence that her healing period extended to February 19, 1985, such premise on our part would not override the Commission's finding that Plaster had a temporary total disability that ended January 25, 1984, if the Commission's finding was supported by substantial evidence. If permissive inferences to be drawn from the evidence are conflicting, the choice rests with the Commission, and is binding on this court. *Williams v.*

**914**

*S.N. Long Warehouse Company,* 426 S.W. 2d 725, 733 (Mo.App.1968).

The record reveals that Dr. Harmon, in a letter dated January 25, 1984, advised Dayco that as of that date Plaster was totally disabled in regard to her prior employment, and would not be able to return to work at Dayco. Dr. Perry concurred in Dr. Harmon's opinion, and Plaster's medical reports established that no improvement in her condition was expected after the January 25, 1984, date. These facts were competent and substantial evidence that the temporary total disability period did not extend past January 25, 1984.

The final award of the Commission which affirmed the findings, conclusions, and decision of the administrative law judge is affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.