**Kenneth GOLEMAN, Appellant,**

v.

**MCI TRANSPORTERS, Respondent.**

**No. WD 45838.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1992.

Motion For Rehearing and/or Transfer to
Supreme Court Denied
Dec. 22, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Glenn Russell Gulick, Jr., Joplin, for appellant.

Greg B. Carter, Joplin, for respondent.

Before TURNAGE, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

This is an appeal from an award adverse to Mr. Goleman, an employee of MCI, rendered by the Labor and Industrial Relations Commission (Commission) on a worker's compensation claim. The decision of the Administrative Law Judge (ALJ) denied benefits for the employee's claimed injury occurring on October 28, 1988.

Mr. Goleman was an over-the-road truck driver for the employer, MCI. He was first injured on September 19, 1987, in Baltimore, Maryland when he sustained a work-related injury to his back and hip while unloading air conditioners. He filed a formal claim for worker's compensation benefits and was treated by Dr. Mahaffy. He was released for work with lifting restrictions, specifically, not to do any heavy lifting and no loading or unloading of trucks. The second injury, the one at issue, occurred October 18, 1988, in Kansas City, Missouri while he was unloading boxes from an MCI trailer and hurt his lower back. Since the October 1988 incident, he has not worked as a truck driver and has not been involved in any employment requiring physical labor of any type. In January 1989, MCI put Mr. Goleman in an office job as a dispatcher for approximately four or five hours per day for four weeks. At the end of that time, Mr. Goleman was told by MCI that he was not qualified as a dispatcher and his weekly temporary disability compensation benefits were reinstated.

He filed his claim for compensation August 23, 1989. The hearing for the October 1988 injury took place on September 19, 1990, at which time Mr. Goleman was still seeking recovery for the first work-related injury. The ALJ denied Mr. Goleman's claim for compensation because he had a previous industrial disabling condition from his September 19, 1987 injury and no proof had been offered separating it from the injuries occurring from the October 1988 accident. An application for review was filed with the Commission which affirmed the decision of the ALJ. This appeal follows.

The employee claims first that he did not suffer a permanent disability in the first accident and therefore, there was no need to allocate damages between accidents. His second argument claims that since the same employer is liable for both injuries, his failure to allocate the disability between the two injuries does not defeat his right of recovery. For his third point, he argues the Commission erred in failing to find a causal connection between the October 1988 accident and his injury because the sudden onset of the injury supplied the causal connection. Finally, the employee contends his Second Injury Fund settlement of ten percent is conclusive of his first injury.

The employer responds that the employee failed to establish the nature and extent of the injury he sustained from the October 1988 accident or, alternatively, failed to allocate the extent of damage to each of the accidents. At the commencement of the hearing the ALJ and the attorneys agreed that two of the issues to be tried would be "whether the conditions complained of by the claimant were caused by

the related accident" and the "nature and extent of the permanent partial disability and any pre-existing disability that may have been suffered by the claimant."

For his first point, the employee argues that there was no competent evidence that the first accident resulted in permanent disability. Therefore, there was no need to allocate the employee's disability between the two accidents and the Commission's reliance on *Plaster v. Dayco Corp.*, 760 S.W.2d 911 (Mo.App.1988) was in error. The evidence presented, in the light most favorable to the decision of the Commission, was that while Mr. Goleman was lifting air conditioners in September 1987, he sustained an injury to his lower back and hip; he filed a formal claim for compensation for that injury; received weekly worker's compensation benefits; and was treated by a physician for the injury. Approximately ten days following the accident he was released to return to work with medical restrictions not to do any heavy lifting and no loading or unloading of the truck. At the time of this hearing, Mr. Goleman was still seeking recovery for the September 1987 claim. His medical bills and the time missed from work had been paid. The remaining and unresolved issue was the extent of the employee's permanent partial disability. Further, the physician testified that Mr. Goleman told him his lower back pains arising from the September 1987 accident had persisted or continued.

Finally, the employee made and settled a claim against the Second Injury Fund using the September 19, 1987 injury as the basis of his claim. The Commission found this to be evidence of a pre-existing disability to the employee's back, continuing to the time of the hearing, thereby requiring evidence of the extent of the pre-existing claim.

Dr. Sundstrom's testimony was the only medical testimony offered at the hearing concerning the causal relationship of the employee's injury and the two work-related accidents. The doctor was aware of Mr. Goleman's history concerning the two back injuries. At the time of Dr. Sundstrom's testimony, the doctor was unable to determine which of the injuries caused the back problem.

■ The claimant, in a worker's compensation case, bears the burden of proving that an accident occurred and that it resulted in injury. *Dolen v. Bandera's Cafe & Bar*, 800 S.W.2d 163, 164 (Mo.App.1990). A claimant must not only show causation between the accident and the injury but also that a disability resulted and the extent of such disability. *Smith v. National Lead Co.*, 228 S.W.2d 407, 412[4] (Mo.App. 1950).

■ When a pre-existing disability is present, the claimant is required to prove the extent of the pre-existing disability so that such percentage can be evaluated against the disability percentage existing after the compensable injury. *Plaster*, 760 S.W.2d at 913. Dr. Sundstrom, an orthopedic specialist, was one of three physicians who treated Mr. Goleman. He examined and rated the employee. Dr. Sundstrom's deposition was admitted into evidence as the only medical testimony provided at the hearing. He testified that the employee had a fifty percent impairment of function to the whole person and was suffering from severe chronic lumbodorsal arthralgia. Mr. Goleman is seeking fifty percent permanent partial disability as a result of the accident in October 1988. Dr. Sundstrom's testimony on behalf of the employee was unable to identify, absent speculation, which accident caused the injuries that the employee now claims. He testified:

Q. The low back pain that you referenced, the September of 1987 injury, he indicated has persisted or continued?

A. That's true.

Q. When you saw him in January of 1989 you weren't able to make a diagnosis as to which of the injuries had caused the back problem?

A. That's right.

Q. And, as we sit here today, you can't differentiate between those two injuries, one as opposed to the other, as being the cause of the back problem?

A.  That's true.

Q.  It would be speculative on your part to try and differentiate between the two?

A.  Yes.

■ Under the circumstances, only expert medical testimony would be sufficient to satisfy this burden. *Griggs v. A.B. Chance Co.,* 503 S.W.2d 697, 704–705 (Mo. App.1973). In this manner, the Commission would be able to determine the percentage of permanent partial disability attributable to the job-related injury of October 1988. *Plaster,* 760 S.W.2d at 913. It was Mr. Goleman's responsibility to provide testimony of the extent of the pre-existing injury if he expected to recover permanent partial disability for the additional injury incurred by reason of the October 1988 accident. *Id.* This he failed to do. There existed substantial evidence that Mr. Goleman sustained a permanent injury in September 1987 to cause the Commission to require testimony separating the two accidents and injuries. It is a determination with which we will not interfere. *Carron v. Ste. Genevieve School Dist.,* 800 S.W.2d 64, 67 (Mo.App.1990).

■ In his second point, the employee claims that it makes no difference whether the injuries are separated because both were work-related and while he was employed by the same company, the respondent. This argument ignores that there were two separate claims pending and the claimant was only entitled to one recovery for the claim at issue. Both of these injuries, September 1987 and October 1988, were not compensable in *this* case. The September 1987 claim was the subject of a separate, pending claim and not compensable in this claim. The employee was not entitled to recover fifty percent permanent partial disability for the October 1988 injury where part or all of his disability was the result of the September 1987 accident and then be allowed to pursue the earlier claim which remained open at the time of this hearing. Under those circumstances it was the employee's burden to prove the nature and extent of the disability attributed to the job-related or compensable inju-

ry. *Bersett v. National Super Markets, Inc.,* 808 S.W.2d 34, 36 (Mo.App.1991).

■ The employee next claims that the Commission erred because the sudden onset rule, when applied to the facts of this case, supplied the element of causation. The employee testified that he experienced a snap in his lower back with sharp pains while lifting of 90 to 120 pound boxes. He was picking the boxes up, twisting and putting them on a conveyor belt. Causation, like other facts, may be shown by direct or circumstantial evidence. *Harris v. Washington,* 654 S.W.2d 303, 306 (Mo. App.1983). Where there is a sudden onset of pain or symptoms following an event, lay testimony is sufficient to establish the element of causation. *Pruneau v. Smiljanich,* 585 S.W.2d 252, 255–56 (Mo.App. 1979).

■ In *Pruneau,* the plaintiff's symptoms of headache, back pain, visual impairment and nausea appeared three or four days after the accident. *Id.* at 255. She shortly consulted a doctor. These facts were sufficient to apply sudden onset as a substitute for medical testimony of causation. *Id.* The sudden onset category embraces those "cases where the physical disability develops coincidentally with the negligent act, such as broken bones ..., immediate, continuing back pain ..., or an obvious wound." *See DeMoulin v. Kissir,* 446 S.W.2d 162, 165 (Mo.App.1969). The court in *Pruneau* found the sudden onset rule applicable, but observed that "[t]here was no evidence that this pain stemmed from a pre-existing condition...." *Pruneau,* 585 S.W.2d at 256. *Griggs v. A.B. Chance,* supra, acknowledged that a "... lay witness can constitute substantial evidence of the nature, cause, and extent of the disability when the facts fall within the realm of lay understanding." 503 S.W.2d at 704. However, the court continued that expert opinion is necessary when the injury is beyond the lay understanding and "particularly where there is a serious question of pre-existing disability and its extent." *Id.* at 704. This injury was diagnosed as a severe chronic lumbodorsal arthralgia, by rights a sophisticated injury calling for medical testimony for understanding. The

sudden onset nature of the injury is further complicated by the acknowledged pre-existing injury. In this factual context, lay testimony of sudden onset was not sufficient to supply the element of causation. The point is denied.

■ For his final point the employee complains that pursuant § 287.190, RSMo the settlement with the Second Injury Fund of ten percent due to his pre-existing hip injury amounts to conclusive evidence of the extent from the September 1987 injury.

In one of the employee's post-hearing motion, he argued to the Commission that the settlement document "... was to compromise a settlement on the issues and *not to determine the extent of any pre-existing disabilities.*" And in another post-hearing pleading before the Commission he stated: "The 10 percent to the hip was an *arbitrary percentage* used to negotiate a settlement on the issues to avoid the need for a formal hearing." (Emphasis added in both sentences). On appeal, the employee argued the Commission erred because it failed to find what he once described as the "arbitrary percentage" in the settlement document as conclusive proof of the extent of the pre-existing injury.

The employee's contention that the settlement procedure was not intended to determine the extent of any pre-existing disabilities and his description of it as arbitrary, causes us to view the 10% disability percentage rating with skepticism. The Second Injury Fund settlement document was marked as an exhibit and received in evidence but was not offered to prove the 10% disability rating as conclusively binding of the extent of the pre-existing disability. Under these circumstances we will not convict the Commission of error for refusing to apply the 10% figure to the total disability. *Gore v. Wochner,* 558 S.W.2d 333, 334 (Mo.App.1977). The point is denied.

The judgment is affirmed.

All concur.