Vicki BLANKENSHIP, Appellant,

v.

COLUMBIA SPORTSWEAR and Kemper Insurance Company, Respondents.

No. 19073.

Missouri Court of Appeals, Southern District, Division Two.

May 20, 1994.

Gregg N. Johnson, Belleville, IL, for appellant.

Paul D. Larimore, Evans & Dixon, St. Louis, for respondents.

CROW, Judge.

Appellant, Vicki Blankenship, filed a claim for compensation under The Workers' Compensation Law, chapter 287, RSMo1986, as amended. Following an evidentiary hearing, an administrative law judge ("ALJ") of the Division of Workers' Compensation entered an award denying the claim. Appellant thereupon applied for review by the Labor and Industrial Relations Commission ("the Commission"). It entered a "Final Award Denying Compensation," affirming the ALJ's award. Appellant brings this appeal from the Commission's award.

Appellant's claim alleged her back was injured in a work-related accident on August 13, 1990.

The ALJ, after a meticulous review of the evidence, found Appellant failed to prove (a) she had a work-related accident on the alleged date, or (b) the extent, if any, that her existing back problems were caused by work-related activities on the alleged date. The Commission incorporated the ALJ's findings in its award.

■ We review the award of the Commission, not that of the ALJ. *Brundige v. Boehringer Ingelheim,* 812 S.W.2d 200, 201[1] (Mo.App.W.D.1991); *Richardson v. Falcon Products, Inc.,* 739 S.W.2d 596, 597[1] (Mo. App.E.D.1987).

■ Our review is governed by Mo. Const. art. V, § 18 (1945, amended 1976), and

§ 287.495, RSMo1986.[1] From those sources, additional principles have evolved. *Rector v. City of Springfield,* 820 S.W.2d 639, 640 (Mo. App.S.D.1991); *Causey v. McCord,* 774 S.W.2d 898, 899 (Mo.App.S.D.1989). In reviewing questions of fact, an appellate court's inquiry is limited to whether, upon the whole record and considering the evidence in the light most favorable to the Commission's findings, the Commission could have reasonably made such findings and reached the result it did. *Lawson v. Emerson Electric Co.,* 833 S.W.2d 467, 471 (Mo.App.S.D.1992); *Swillum v. Empire Gas Transport, Inc.,* 698 S.W.2d 921, 925[3] (Mo.App.S.D.1985). The appellate court disregards evidence which might support a finding different from that of the Commission, even though a contrary finding would be supported by the evidence. *Rector,* 820 S.W.2d at 640[3]; *Phillips v. Ozark Bank,* 803 S.W.2d 662, 663 (Mo.App. S.D.1991).

The Commission (by incorporating the ALJ's findings into its award) found that Appellant first sought medical attention for back problems on January 11, 1983, seven and a half years before the alleged accident on which the instant claim is based. The records of Dr. Mark Kasten, Appellant's "family doctor," show Appellant complained to him that date about back pain which had been constant for two weeks.

The Commission found Appellant complained again to Dr. Kasten on August 17, 1984, about low back pain which had persisted a week.

Appellant was struck in the back by a canoe on a float trip in July, 1985. She saw Dr. Kasten about that on July 17, 1985, complaining of bruising and swelling over the sacrum.

The Commission found Appellant complained again to Dr. Kasten about low back

pain on December 12, 1986. Dr. Kasten's records show a diagnosis of "back strain."

The Commission found Appellant complained again to Dr. Kasten about back pain on November 23, 1987. Dr. Kasten's records show the pain had persisted approximately three weeks. Dr. Kasten attributed the complaint to "acute back strain." Appellant had a follow-up visit to Dr. Kasten on December 1, 1987, regarding that condition.

On April 30, 1990, three and a half months before the alleged accident on which the instant claim is based, Appellant was working for Columbia Sportswear ("Sportswear"). While at work that date, Appellant slipped and fell. Appellant testified she felt and heard a "pop" in her low back. Two days later, her back was still painful, so she saw Sportswear's "company doctor."

Appellant had low back pain continuously after the April 30, 1990, fall. On July 25, 1990, she consulted Dr. Donald Metrajohn, a chiropractor. Her "patient case history" in Dr. Metrajohn's records shows her major complaint as "back pain." The case history also shows: "How long have you had this condition? 8 months[.]"

The evidence is in conflict regarding the date of the alleged accident on which the instant claim is based. As reported earlier, Appellant's claim showed the date as August 13, 1990. However, as shall become evident *infra,* the date may have been August 14, 1990.

Appellant testified she was operating a sewing machine at Sportswear on the morning of August 13, 1990. Her shift began at 7:30. Around 9:00, the "lower part" of her back was "hurting real bad." At break time, 9:20, Appellant obtained permission from a company official to leave work and go to Dr. Metrajohn.

1. Section 287.495 reads, in pertinent part:
    "1. ... Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

    ....
    (3) That the facts found by the commission do not support the award;
    (4) That there was not sufficient competent evidence in the record to warrant the making of the award.
    ...."

He "worked with" Appellant's back. She then returned to work, arriving around 11:00 a.m.

By 2:00 p.m., Appellant was "really having some difficulty" with back pain. It was extending into her left hip. Appellant testified, "I guess a little after 2:00 I had a real sharp pain in my back and it was so sharp that it about knocked my breath—it took my breath." Then, said Appellant, her legs began going numb. Appellant ceased working and, after a few minutes, walked from her work station to a restroom. Later that afternoon, a co-worker drove Appellant to a hospital where she was seen by a doctor in the emergency room.

The hospital record shows Appellant arrived at 4:46 p.m., August 14, 1990. Confronted at trial with the discrepancy between her testimony and the hospital record, Appellant confirmed she was taken to the hospital immediately upon leaving work and conceded, "I really don't know [whether the date was August 13 or 14]."

The emergency room doctor made a diagnosis of: "Muscle strain of the lumbosacral area." The doctor prescribed medication, bed rest and warm moist packs to the painful area.

The records of Dr. Metrajohn, the chiropractor, show Appellant saw him several times between her first visit on July 25, 1990, and the date of the alleged accident on which the instant claim is based. The Commission found:

"Dr. Metrajohn's records indicate [Appellant] had a total of 15 appointments from July 27, 1990 through August 20, 1990. Nine of these appointments were scheduled prior to [Appellant's] trip to the emergency room on August 14, 1990; one of the visits was on the morning before she went to the hospital; and five visits were subsequent to her trip to the emergency room. Although two of her visits prior to August 13th and 14th refer to cervical pain, almost all of the visits both before and after her alleged accident date refer to moderate pain at either the level of the sacrum or the L4 L5."

Appellant does not challenge those findings.

Appellant did not return to work after August 13 (or 14), 1990. About a week after the trip to the emergency room, she saw Dr. Kasten. He began a series of treatments and sent her to physical therapy. He eventually recommended she see an orthopedist. Appellant chose Dr. Gordon W. Eller. She first saw him October 18, 1990.

During the ensuing three months, Dr. Eller had Appellant undergo a series of tests and treated her conservatively. By January, 1991, he suspected the cause of her back and leg pain was "that a nerve root is being pinched." However, he was unable to make a definite diagnosis. He released her to attempt to return to work in late January, 1991.

Appellant testified she tried to work a couple of days but "was in constant pain and agony." She returned to Dr. Eller in March, 1991, and he released her to enter vocational rehabilitation.

Appellant continued to experience back and leg pain. In December, 1991, after further tests, Dr. Eller concluded:

"[Appellant] has degenerative disc disease which has had symptoms of impingement of the nerve root all along, but our tests haven't been able to identify the level fully until now; and ... she has an L5 nerve root being pinched on the left by a combination of things; number one, a bulging disc; number two, some degenerative facet changes on that side which go along with degenerative disc disease; and number three, probably by some hypertrophy of the ligamentum. Any one of those things, she might not have problems; but the combination of them does cause, in her case, a kind of a lateral recessed stenosis, and it is pinching the nerve root."

As a result of that diagnosis, Dr. Eller performed a laminectomy on Appellant on December 10, 1991.

In February, 1992, Appellant began a five-month program of physical therapy. Thereafter, in the fall of 1992, she became a full-time college student in a social work curricu-

lum, an educational plan proposed by vocational rehabilitation.

Appellant testified that on September 17, 1992, she experienced severe back pain even though she had engaged in no physical activity. She went to a hospital emergency room where a physician examined her, prescribed medication, and recommended rest. She was instructed to see Dr. Kasten or Dr. Eller if her pain persisted.

At trial, Appellant testified, "I'm still having a lot of pain in my back and in my left hip."

In addition to the instant claim, Appellant filed a workers' compensation claim based on her April 30, 1990, fall at work. Appellant settled that claim August 27, 1992, six weeks before the instant claim was heard by the ALJ. With respect to the settlement, the Commission's findings in the instant case include the following:

"Under the terms of this settlement [Appellant] received a total of $10,000.00 which was based on a fifteen percent permanent partial disability rating of the body as a whole at the low back plus $1,000.00 paid for disputed medical and $1,350.00 paid for approximately 10⅔ weeks of temporary total disability...."

Appellant does not challenge those findings.

Appellant's contention that she suffered a compensable injury on August 13 (or 14), 1990, is tied to her description of her duties. She testified she was seated at a sewing machine making jacket linings, a task that required her to bend to her left and pick up an unfinished garment from a box on the floor. After placing it on her machine, she sewed it to another piece of material, then placed the completed garment in a box on the floor to her right. Each garment required "a matter of a few seconds." It will be recalled that Appellant's shift began at 7:30 a.m. The day's chronology, culminating in Appellant's trip to the hospital, has been set forth earlier.

The following question was asked of Dr. Eller: "[M]ight or could the April 30, 1990, accident have caused or aggravated the bulg-

ing disc that you have found at the L4–L5 level?"

Over an objection that the question did not hypothesize Appellant's "medical history" of prior and repetitive complaints about low back pain, Dr. Eller answered, "Yes."

Dr. Eller was asked the same question regarding "the August 13, 1990, incident." Over the same objection, Dr. Eller answered, "Yes."

Dr. William Sedgwick, a board certified orthopedic surgeon, examined Appellant on July 14, 1992, eight weeks before trial. He noted she had "undergone a lumbar decompressive laminectomy at L4–5 for lateral recess stenosis superimposed on a bulging L4–5 disk." He reviewed the operative notes from that surgery, along with other medical records including those of Dr. Metrajohn.

Dr. Sedgwick was given a detailed question hypothesizing Appellant's history of back complaints, her fall at Sportswear on April 30, 1990, and the events of August 13 (or 14), 1990, and asked if he had an opinion about whether her condition was causally related to what occurred on August 13, 1990. Dr. Sedgwick answered, "I believe that most, if not all, of that condition predated the 8–13–90 event." His testimony continued:

"Q ... So I understand your testimony, Doctor, is it your testimony that you can't state within a reasonable degree of medical certainty whether it is her pre-existing condition, the 4–30–90 event, or 8–13–90 event that is the cause of the condition you have diagnosed?

A I can't say exactly which one caused the ultimate need for her surgery. I think they may have both contributed.

....

Q ... [Appellant] has had a significant amount of medical treatment including surgery subsequent to August 13th, 1990. In your opinion, based upon a reasonable degree of medical certainty, was that treatment necessitated by the event of 8–13–90?

....

[A] I think I would answer it the same way I just answered the question about causation. It, as well as the other things, may have contributed to it. I can't say

exactly how much the 8–13–90 injury contributed in terms of exact percentage, but I think that she had a significant amount of stenosis and probably bulging of the disk prior to 8–13–90 injury. But I can't say how much and it was that stenosis and bulging disk that led to the surgery.

Q ... In your opinion, Doctor, is the incident of 8–13–90 a greater or lesser factor in her overall condition than the incident of 4–30–90?

....

[A] I think that as I said earlier, a significant portion of her present condition for which she ultimately underwent the surgery, predated the injury of 8–13–90, by documentation in medical records and that for that reason by deduction I would say that it's likely that the April, 1990 injury contributed more than 8–13–90 injury to the ultimate need of surgery, but I don't know for how much."

The Commission, after considering Appellant's history of back problems commencing in 1983, her fall at Sportswear on April 30, 1990 (and settlement of the workers' compensation claim arising from it), and her testimony about the episode on August 13 (or 14), 1990, found:

"Although [Appellant] testified she experienced a sudden increase in the intensity of pain she was experiencing [on August 13, 1990], and this increase in pain occurred at work, there was no triggering event identified such as lifting, falling, or a specific twisting event. Although, at the time of the hearing, [Appellant] described her job as involving a twisting motion, neither in her direct testimony at the hearing nor in her deposition testimony did she relate any onset of pain to a specific event....

Although the term 'accident' has been broadly defined to include a gradual pathological breakdown of the body, in a case like [Appellant's] where there is evidence of ongoing symptoms and treatment following a prior 'accident', it is not logical to assume [Appellant] has had a new accident merely because she was at work when she experienced additional symptoms. Thus, the combination of pre-existing, ongoing back symptoms and treatment immediately

preceding the alleged new accident and the absence of any specific event which produced the increased level of pain make it very difficult to support a finding of a new work related accident. The mere fact that [Appellant] happened to be at work when her symptoms intensified is not sufficient to support a finding of a work related accident.

... while it may be true that [Appellant] experienced a worsening or greater level of pain while at work on either August 13th or August 14th of 1990, which caused [her] to seek additional medical treatment, there is no evidence indicating she suffered a new accident in the traditional sense of some traumatic event. [Appellant] was not asymptomatic prior to this alleged accident, and in fact was experiencing constant pain and ongoing treatment immediately prior to her alleged new accident date. Since [Appellant's] April 30th workers' compensation claim has been closed by compromise settlement, the question of whether [her] subsequent treatment may have been causally related to that accident is moot."

On the subject of causation, the Commission found:

"[I]t is critical for [Appellant] to have credible medical evidence separating the alleged compensable incident from noncompensable incidents on the issues of disability and causation. Dr. Eller's testimony that both the April 30, 1990 and August 13, 1990 incidents 'might or could have caused or aggravated' [Appellant's] bulging disc clearly does not satisfy [her] burden.... The only other medical evidence was the opinion of Dr. Sedgwick, and although he felt the incident on August 13 might have contributed to [Appellant's] problems, he was not willing to express an opinion as to which of the possible incidents caused her ultimate need for surgery.... Although Dr. Sedgwick felt [Appellant] had a 15% permanent partial disability, he could not say how much, if any of that disability was attributable to the August 13th incident.

... there are at least three possible causes of [Appellant's] back complaints and

subsequent treatment. All of [her] back complaints may have been related to her degenerative disc disease which had apparently resulted in four prior episodes of back pain. A second possible cause is the April 30th, 1990 accident, which was clearly a traumatic event which caused the immediate onset of symptoms. The final alternative cause is [her] general work activities on either August 13th or August 14th, 1990. The burden is on [Appellant] to separate these non-related or compensable events from the alleged compensable accident of August 13th or August 14th, 1992 [sic], and [she] has not satisfied this burden."

Appellant maintains the Commission erred "in finding that there was no accident occurring on or about August 13, 1990." Appellant asserts she testified that her pain after that date "was much different and much more intense than any pain she had endured prior to that, including the accident of April 30, 1990." Appellant insists her testimony established that she had an "accident" on August 13 (or 14), 1990, within the statutory definition of that term as it was construed in *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781 (Mo. banc 1983). According to Appellant, her job duties "amounted to a classic repetitive bending and twisting motion as contemplated by the *Wolfgeher* decision."

On August 13 (or 14), 1990, the statutory definition of "accident" appeared at § 287.-020.2, RSMo1986. It had been carried forward unchanged from RSMo1978, the version construed in *Wolfgeher*.[2]

We need not undertake to extract a definition of "accident" from *Wolfgeher*. For our purposes here, it is sufficient to note that even though *Wolfgeher* broadened the concept of "accident," a claimant was still required to establish that the physical infirmity or condition for which workers' compensation benefits were sought resulted from a job-related activity or hazard. *Wolfgeher*, 646 S.W.2d at 784–85.

In *Brundige*, 812 S.W.2d 200, a claimant sought workers' compensation benefits for carpal tunnel syndrome. The issue was whether that condition was caused by a fall at her home, unrelated to her employment, or by a repetitive twisting motion of her wrist in connection with her job of over 20 years. Affirming the denial of the claim, the Western District of this Court held:

"Medical causation, not within common knowledge or experience, must be established by scientific or medical evidence showing the cause and effect relationship between the complained of condition and the asserted cause. [Citation omitted.] The record in the instant case overwhelmingly supports the proposition that [the claimant's] carpal tunnel syndrome resulted from the fall which fractured her wrist.... 'A claimant's medical expert must establish the probability that the disease was caused by conditions in the work place.' "

812 S.W.2d at 202[5, 6].

■ *Brundige* is consistent with the rule that a claimant seeking workers' compensation benefits bears the burden of proving not only that an accident occurred, but also that it resulted in injury. *Dolen v. Bandera's Cafe & Bar*, 800 S.W.2d 163, 164[2] (Mo.App. E.D.1990); *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703[1] (Mo.App.1973). The claimant must produce evidence from which it reasonably may be found that such injury resulted from the cause for which the employer would be liable. *Dolen*, 800 S.W.2d at 164[2]; *Griggs*, 503 S.W.2d at 704[6].

■ In *Plaster v. Dayco Corp.*, 760 S.W.2d 911 (Mo.App.S.D.1988), the Commission held a claimant was not entitled to workers' compensation benefits for permanent partial disability. The claimant there (as here) had an extensive history of low back pain which her physician attributed to degenerative disc disease in the lumbar spine. She underwent surgery for that condition in 1976. Her low back pain returned, but she nonetheless resumed work. In 1983, she reinjured her back on the job, and was ultimately pro-

2. Section 287.020.2, RSMo1986, has since been amended by Laws of Missouri 1993, S.B. No. 251, § A. The parties do not mention the amendment. We assume they conclude it does not apply. We proceed on that assumption.

nounced permanently disabled. She claimed workers' compensation benefits based on the 1983 reinjury. There was no medical evidence as to what percentage of her permanent partial disability preceded the 1983 reinjury.

Affirming the denial, this Court held:

"Expert opinion evidence is necessary in order to prove the extent of a preexisting disability, so that such percentage can be evaluated against the disability percentage existing after the compensable injury, in order to determine what percentage of permanent partial disability is attributable to the job-related injury which is the basis for the workers' compensation claim. It was [the claimant's] duty to offer such testimony if she hoped to recover anything for any additional disability incurred by reason of the job related injury that she suffered [in] ... 1983. Her failure to do so bars her from recovering permanent partial disability benefits."

760 S.W.2d at 913[1, 2].

Appellant argues that *Plaster* is inapposite in that Appellant was seeking only "temporary" benefits, whereas *Plaster* involved permanent partial disability. However, as Sportswear and its insurer ("Respondents") point out, proof of causation is an element of every workers' compensation claim. *Dolen*, 800 S.W.2d at 164[2]; *Griggs*, 503 S.W.2d at 704[6].

Although Appellant maintains her pain intensified after August 13 (or 14), 1990, she admitted at trial that she never told Dr. Eller or Dr. Sedgwick that such pain had anything to do with her twisting and picking up coats. Furthermore, as pointed out by Respondents, Dr. Sedgwick testified: "[S]tenosis generally isn't aggravated by repetitive bending. In fact, bending often times will relieve symptoms of stenosis."

Appellant settled her workers' compensation claim for her fall on April 30, 1990, on the basis of a permanent partial disability rating of 15 percent of the body as a whole. The evidence failed to show she was disabled to any greater degree than that at time of trial. The evidence also failed to establish the extent, if any, to which her condition after August 13 (or 14), 1990, was attributable to her activities at work that day.

The Commission determined that Appellant failed to prove how much (if at all) her work-related activities of August 13 (or 14), 1990, aggravated the spinal stenosis and bulging disc with which she was already afflicted. Viewing the evidence in the light most favorable to that finding, as we must, we cannot declare the finding erroneous.

The Commission's award denying compensation is affirmed.

PREWITT and GARRISON, JJ., concur.