**Roger W. DOWNING, Respondent,**

v.

**WILLAMETTE INDUSTRIES, INC., Appellant,**

and

**Second Injury Fund, Respondent.**

**No. WD 50006.**

Missouri Court of Appeals, Western District.

March 28, 1995.

Robert M. Sommers, Kansas City, for appellant.

Mario Mandina, Kansas City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Appellant Willamette Industries appeals from a temporary award of Workers' Compensation benefits awarded by the Missouri Labor & Industrial Relations Commission.

Roger W. Downing has sustained at least five back injuries over the course of several years. Downing had three workers' compensation claims pending against two different employers, and they were consolidated for hearing.

According to the record, Downing first injured his back in August, 1989, while building a rock garden for his wife at home. He was employed by Lake City Arsenal at that time and was off work for several weeks. Dr. James Stuckmeyer, an orthopedic specialist, rendered treatment for this injury. Downing stated he completely recovered from this injury. By the time he was released to return to work, however, he had no job to return to due to layoffs.

Following this he worked at Wells Fargo installing alarms and at Cable–Dahmer Chevrolet selling cars. Neither job required heavy lifting or strenuous use of his back. In May, 1991, he was employed by the Country Club of Blue Springs, Missouri.

On January 4, 1992, Downing injured his back while lifting heavy objects. On January 3, 1992, Downing was also employed by appellant Willamette Industries. Downing testified that he has worked two full time jobs for many years to support himself and his family. He had reported to work at Willamette at 11:00 p.m. and was loading scrap. About 4:00 a.m. January 4, 1992, he picked up a heavy roll of scrap and felt a "real sharp pain" in his back. He continued to work and finished his shift, and his "back was still hurting." Downing stated, "I thought well, I was just tired, and then from there on I went to the club." Downing described his pain as "It was in my low back. I had a real sharp pain and it went down in my leg a little bit." The pain radiated to his left leg and buttocks. Downing stated he reported the incident to his "boss Gary Vengley" on January 6, 1992.

Downing went directly from his job at Willamette to his second job at the Country Club and arrived there about 7:30 a.m. His duties included assisting in the removal of all kitchen appliances and contents so the kitchen could be steam cleaned and set up for painting. Apparently, Downing was in some sort of supervisory position since he testified that he assigned 15 employees their duties that morning. Downing was assisting moving a broiler that weighed "between five and six hundred pounds" and a double oven that weighed at least 500 pounds. These items were moved by putting them on dollies and rolling them to another area of the club. It was during this exercise that Downing's back "started hurting again." Downing stated, "I

had the same pain that I had had earlier. You know, my back was still hurting but it wasn't extreme, and when I tried helping Tim and this other guy lift this stove up, I had a real sharp pain again and I realized, you know, I had pulled a muscle or something was wrong." The pain was again in his low back, "down in my leg, my buttocks." He reported this to his boss, Mr. VanRaamsdonk. His boss knew he was working two jobs and in response to Downing's request for medical aid laughed and stated "That's your problem." Downing eventually received treatment.

In December, 1992, Downing slipped on his neighbor's steps. He fell and landed on his back. Downing testified that it was not his lower back, but the middle of his back that was injured in this accident. A few days later, on December 17 or 18, 1992, while working for the Country Club, he again sustained injury to the same area of his lower back as he had injured on January 4, 1992. On this occasion, he was operating a "shop vac." He was hauling water and pushing the "shop vac", and he injured his back. He again experienced shooting pain down into his buttocks and left leg. Downing did not report this injury to his employer because he believed his supervisor, Angie Melton, observed him in pain. On December 20 or 21, 1992, Downing saw his family physician, Dr. Keith Schneider. This visit was a result of the fall at the neighbors and his use of the "shop vac" at work. Over the course of these back injuries Downing received extensive medical care.

Following the first work related injury on January 4, 1992, Downing consulted Dr. Schneider. Dr. Schneider prescribed "pain pills and anti-inflammatories." Dr. Schneider gave Downing a "light duty slip." Downing kept both Willamette and the Country Club apprised of his condition. His request for light duty was denied by Willamette. He was told by Willamette that they did not want him in the plant until he was "fully released a hundred percent."

Dr. Schneider then referred Downing to Dr. Stuckmeyer, the orthopedic specialist. Stuckmeyer ordered a CAT scan and an MRI. Subsequently, Stuckmeyer prescribed a Medrol Dosepak. Downing was under Stuckmeyer's care from February to April, 1992. During this period Downing's own insurance carrier was paying a portion of the medical expenses and he was paying the rest. Downing quit seeing Dr. Stuckmeyer in April, 1992, because Willamette terminated him and his insurance "ran out."

Downing testified he was not familiar with his rights under Workers' Compensation and because of this he did not seek medical aid through the Workers' Compensation Act.

Downing did not see Dr. Stuckmeyer from April, 1992, to December, 1992, although he testified that his lower back pain "kept getting more and more frequent" during this period. He did see Dr. Schneider, the family physician, during this period for a lacerated finger. His finger was lacerated while he was working on his car engine.

After Downing saw Dr. Schneider in December, 1992, as a result of his fall at the neighbors and the lower back strain at the Country Club, he saw Dr. Stuckmeyer in January, 1993. Stuckmeyer prescribed pain pills and recommended injections. Also in January, 1993, Downing saw Dr. Keith Broughton and Dr. Robert Blackann. These doctors were provided by Medicaid. Downing stated he saw these doctors because the Country Club did not provide him medical aid.

Downing eventually filed a compensation claim against both Willamette and the Country Club. On January 8, 1993, Downing filed against Willamette, and a week later he filed against the Country Club. Both claims were for the back injury he sustained on January 4, 1992. He subsequently filed another claim against the Country Club for the injuries sustained in December, 1992, while he was using the "shop vac." He was provided temporary total disability from April, 1993, through July 26, 1993, by the Country Club. Subsequently, he was treated by Dr. David Ebelke, an orthopedic specialist obtained for Downing by the Country Club. Dr. Ebelke had Downing undergo a CAT scan, an MRI, a Myelogram and an EMG. Dr. Ebelke scheduled surgery for Downing, but the Country Club canceled the surgery and ter-

minated his temporary total disability payments.

Mr. Downing did not receive any compensation from Willamette. Downing applied for and received an expedited hearing based on hardship. At this hearing before the administrative law judge on February 9, 1994, live testimony of Downing with various medical records including those of Dr. Ebelke were "offered and received in evidence without objection." Also received without objection was a deposition, report of injury and the payroll status of Downing.

On May 17, 1993, Dr. Ebelke's report reflected that it was not possible to say which injury was responsible for Downing's present symptom. In analyzing the work related injuries, Dr. Ebelke noted, "I might lean slightly towards the first one or two injuries as the most likely precipitating factors." On September 6, 1993, Dr. Ebelke's file reflects that he still believes the first injury caused the initial flare-up. Specifically, his report stated, "I believe they are both responsible to a degree, but I would lean more towards the initial injury as the main flare-up and then the second injury is just an additional flare-up of the same underlying problem."

Based upon the whole record before him, the administrative law judge awarded Downing medical aid and temporary total disability compensation to be paid by appellant Willamette. Both Downing and Willamette filed an Application for Review. The Labor & Industrial Commission affirmed the award of the administrative law judge after reviewing the evidence and considering the whole record. Willamette's appeal to this court followed.

Appellant Willamette Industries claims the Labor & Industrial Relations Commission erred in awarding medical and temporary total disability to Downing because there was not substantial evidence to support a finding he had met his burden of proof on medical causation.

■ This court reviews a workers' compensation case in the light most favorable to the award of the Commission and upholds the Commission's decision if it is supported by competent and substantial evidence. *Matzker v. St. Joseph Minerals Corp.*, 740 S.W.2d 362, 363 (Mo.App.1987). Section 287.495, RSMo 1986. We will only set aside the award if the Commission's findings are clearly contrary to the overwhelming weight of the evidence. *Id.*

■ Although the parties in the instant case stipulated to the medical reports and they were received without objection, Willamette now claims that Dr. Ebelke's artful use of the word "lean" instead of the traditional "cause" should require a reversal of this award.

■ It does not. When all of the testimony, depositions and medical records are considered, we find the award supported by competent and substantial evidence. The award is for temporary or partial disability and subject to further proceedings until a final award may be made. Thus, Downing should prevail if he proves an accident arising out of and in the course of employment which results in temporary disability and need for medical care. *Griggs v. A.B. Chance, Co.*, 503 S.W.2d 697, 705 (Mo.App. 1973).

■ The Commission is the judge of the credibility of a witness and we do not substitute our view of the facts for those found by the Commission if the Commission's findings are supported by sufficient competent evidence. *Barr v. Vickers, Inc.*, 648 S.W.2d 577, 580 (Mo.App.1983). Moreover, doubts about a workers' compensation claim should be resolved in favor of the employee and coverage, but a claim will not stand if an essential element is missing. *Tate v. Southwestern Bell Tel. Co.*, 715 S.W.2d 326, 328 (Mo.App. 1986). However, a claimant does not have to establish elements of the case absolutely. It is sufficient if the elements are demonstrated by reasonable probabilities based on reason and experience which incline the mind to believe but leave room for doubt. *Id.*

In *Schneider v. Ashburn/Schneider Painting*, 849 S.W.2d 271 (Mo.App.1993), the claimant Perry Schneider's medical reports from two different doctors contained different versions of how the accident happened, and both were inconsistent with the version advanced by Perry Schneider at the workers' compensation hearing. The medical records

were introduced, and the discrepancies appeared. Appellant sought to have the commission hear additional evidence newly discovered which consisted of "corrected" medical records. This request was denied. Such contradictions in the appellant's medical records was obviously known to claimant before the hearing, and the commission denied appellant's request to "correct" the record.

The Commission in the case at bar was free to believe or disbelieve the statements in the medical records as well as appellant's testimony. *Id.* at 274. The Commission found Dr. Ebelke's reports credible to establish the January 4, 1992, accident at Willamette as the cause of Downing's current injury and need for surgery. The facts found by the Commission support the award of medical aid and temporary compensation.

The court held in *Bersett v. National Super Mkts., Inc.*, 808 S.W.2d 34, 36 (Mo.App. 1991), that "both of claimant's points on appeal fail because the issue of a *medical causal relationship was contested and tried.*" (emphasis added) In the instant case for temporary total disability, the medical evidence came in by reports. No live or deposition testimony was offered. Granted, Dr. Ebelke's use of the English language left something to be desired, it was sufficient when coupled with the rest of the evidence to establish the cause of the injuries.

The Commission incorporated the decision of the administrative law judge by reference and thus relied upon Dr. Ebelke's opinion that the initial injury at Willamette Industries caused Downing's current disability and need for surgery. Dr. Ebelke's office notes of September 8, 1993, state:

> I support him fully in that his work injury has brought on the symptoms for which I am recommending surgery, and the surgery has a reasonably good chance at success. However, there is [sic] apparently two different carriers of the two different jobs and they are disputing which one is responsible. I believe they are both responsible to a degree, but I would lean more towards the initial injury as the main flare-up and then the second injury is just an additional flare-up of the same underlying problem.

The Commission affirmed and adopted the administrative law judge's specific finding regarding the back injuries of January 3 or 4, 1992, as follows:

> The Court finds that Dr. Ebelke was referring to the two separate injuries which occurred on January 3, 1992 while Employee was employed by both Willamette Industries and the Country Club of Blue Springs. The 'initial injury' to which he refers, therefore, would be the January 3, 1992 injury at Willamette Industries. This Court further finds that even if it construed this statement as referring to the injuries which occurred on January 3, 1992 and December 18, 1992—as was argued by counsel for Willamette Industries—the Court would reach the same conclusion, i.e., that Mr. Downing's accident at Willamette Industries resulted in his surgical condition. This is true because if one accepts this interpretation of Dr. Ebelke's notation, then he necessarily was speaking of Mr. Downing's injury on January 3, 1992 at Willamette Industries and not his January 3, 1992 injury at the Country Club because he noted specifically that the injuries involved two different jobs; therefore, it is not possible that Dr. Ebelke was referring to Mr. Downing's January 3, 1992 injury at the Country Club because his only injury on December 18, 1992 also was at the Country Club. If Dr. Ebelke were referring to these two injuries—both of which were at the Country Club—he would not have stated that the injuries occurred at '. . . two different jobs . . .'. Either interpretation, therefore, leads the Court to conclude that Mr. Downing's January 3, 1992 injury at Willamette Industries resulted in his present need for further surgery.

> The Court finds that Mr. Downing is a very credible and trustworthy witness. There were no discrepancies between his version of events as compared to any of the other witnesses. He did not appear to exaggerate the facts and he testified very deliberately and believably. His testimony was substantiated by the testimony of all witnesses for Country Club of Blue

Springs. Willamette Industries offered no witnesses.

Appellant asserts that Downing must present expert medical testimony to establish that the accident at Willamette on January 4, 1992, caused his need for surgery and not one of Downing's other accidents. Appellant relies heavily on the following four cases: *Goleman v. MCI Transporters*, 844 S.W.2d 463 (Mo.App.1992); *Bersett v. National Super Mkts., Inc.*, 808 S.W.2d 34 (Mo.App. 1991); *Plaster v. Dayco Corp.*, 760 S.W.2d 911 (Mo.App.1988); and *Griggs v. A.B. Chance, Co.*, 503 S.W.2d 697 (Mo.App.1973).

■ Each of the cited cases is immediately distinguishable from the instant case in that *permanent* disability was involved to some degree while only temporary disability is involved in Downing's claim. Appellant fails to appreciate the different causation standard that thus applies. For an award of temporary disability and medical aid, proof of cause of injury is sufficiently made on reasonable probability, while proof of permanency of injury requires reasonable certainty. *Griggs*, 503 S.W.2d at 703.

In *Griggs v. A.B. Chance, Co.*, 503 S.W.2d 697 (Mo.App.1973), the employee claimed injury as a result of her chair at the assembly line slipping backward as she bent over to pick up a pan. The doctor diagnosed claimant's injury as an acute aggravation of a preexisting degenerative back condition and specifically stated that attributing 25% of the permanent disability to the work related accident was mere speculation. The court held that the claimant failed to prove *permanent disability* as a result of the work related accident, but went on to hold that claimant had met her burden of proof as to causation for compensable medical aid and temporary disability compensation. *Id.* at 705.

In the instant case, there is no preexisting back condition prior to January 3, 1992, which caused the testifying doctor, Dr. Ebelke, concern. Although Downing hurt his back in 1989 in a non-work related accident, Downing testified that he completely recovered from this incident, and Dr. Ebelke clearly was not apportioning Downing's current symptoms to that strain. Rather, as indicated above, Dr. Ebelke attributed all of the current symptoms to the work related accidents.

*Plaster v. Dayco Corp.*, 760 S.W.2d 911 (Mo.App.1988), also upheld a Commission finding for temporary total disability even though the evidence failed to show permanent total disability. Moreover, as in *Griggs*, and unlike the instant case, a preexisting degenerative disc disease was involved in *Plaster*. Ten years prior to the *Plaster* employee's work related injury, her family doctor had diagnosed her as having degenerative disc disease and opined at that time that her duties as a factory worker greatly aggravated her back. *Plaster* also confirmed that expert opinion evidence is necessary to prove the extent of a preexisting disability when *permanent* disability "*existing after the compensable injury*" is sought. *Id.* at 913. (emphasis added).

■ At a hardship hearing for temporary disability and medical aid the claimant need only show a compensable accident arising out of and in the course of employment which results in a temporary disability and need for medical care. *Griggs*, 503 S.W.2d at 705. Because Downing is not seeking permanent disability in this case, he did not have the burden of establishing permanent disability from his accident and no additional expert opinion evidence is required.

Appellant argues that Downing must present expert opinion evidence pursuant to *Bersett v. National Super Mkts., Inc.*, 808 S.W.2d 34, 36 (Mo.App.1991), which held where two events, one compensable and one not compensable, contribute to an alleged disability, it is claimant's burden to prove the nature and extent of disability attributed to the job related injury. While a correct statement of the law, the *Bersett* principle is inapplicable to the instant case. In *Bersett* the claimant injured his ankle at work and about one week later reinjured the same ankle while pushing his car. He filed a workers' compensation claim but failed to inform either of the two testifying doctors about the second injury. Because the testifying doctors were unprepared to evaluate the contribution of the second injury to their diagnosis and rating, the administrative law

judge and the commission were free to reject the medical opinions and deem them insufficient to support the disability claim.

In the case at bar Downing was careful to relay the facts surrounding each of his accidents to all the examining doctors, and Dr. Ebelke attributed the current symptoms to the work related injuries only. The administrative law judge and the Commission found this evidence sufficient to support the claim, and we affirm.

In *Goleman v. MCI Transporters,* 844 S.W.2d 463 (Mo.App.1992), the claimant suffered two work related injuries approximately one year apart and sought permanent partial disability as a result of the second accident. Under such circumstances, the court held that only expert medical testimony would be sufficient to satisfy the causal burden. *Goleman,* 844 S.W.2d at 466.

▮ Here, Downing is seeking only temporary disability and has therefore met his burden of establishing the work related accident as the cause of his current symptoms. Causation, like other facts, may be shown by direct or circumstantial evidence. *Id.*

The decision of the Commission awarding medical aid and temporary workers' compensation benefits to Downing is affirmed.

All concur.