**Dorothy GRIGGS, Respondent,**

**v.**

**A. B. CHANCE COMPANY, Employer, and Hartford Accident and Indemnity Company, Insurer, Appellants.**

**No. KCD26320.**

Missouri Court of Appeals, Kansas City District.

Dec. 3, 1973.

Motion for Rehearing and/or Transfer Denied Jan. 4, 1974.

Evans & Dixon, Robert M. Evans, St. Louis, for appellants.

William Brandecker, Ronald E. Smull, Columbia, for respondent.

Before SHANGLER, P. J., and SWOFFORD and WASSERSTROM, JJ.

SHANGLER, Presiding Judge.

The employer and insurer appeal from a judgment of the circuit court which affirmed the award of the Industrial Commission in favor of claimant for 25% permanent partial disability of the body as a whole and for medical expenses reasonably and necessarily incurred.

The employee claimed injury when, while seated on the edge of her chair at the assembly line, the chair slipped backwards as she bent over to pick up a pan and the unexpected movement caused her back to pop and the immediate onset of a severe low back pain radiating to the right leg. The referee had found claimant's account contrary to the physical facts and otherwise so thoroughly discredited by other witnesses as to be unworthy of belief. In reversing the referee's denial of compensation, the Industrial Commission found that, although the evidence of a fellow employee directly contradicted the account given by claimant, her testimony was the more credible and sufficient to discharge the burden of proof imposed by law. The Industrial Commission rested its award of permanent disability on the opinion of claimant's treating physician, Dr. Sosebee, that the accident described by claimant caused an acute aggravation of a degenerative condition in her back and resulted in a 25% disability of her body.

The injury for which the employee makes claim was incurred on the morning of December 30, 1968, but was not reported to her supervisor until later in the afternoon when she requested an aspirin because she had injured her back. That day, the first aid attendant at her place of employment took her to the office of Dr. Bradley where she made complaint of low back pain which radiated to her right leg. The next day Dr. Bradley referred claimant to Dr. Sosebee, an orthopedic physician whose clinical examination revealed marked muscle spasm in the low back, limitation of motion and pain on the right side with straight leg raising. X-ray examination revealed virtual loss of the disc space between the last lumbar and first sacral segment as well as partial sacralization of the fifth lumbar vertebra, diagnosed by Dr. Sosebee as a congenital developmental anomaly. Dr. Sosebee diagnosed claimant's injury as an acute aggravation of degenerative disc disease with irritation of the sciatic nerve. On December 31, 1968, claimant was hospitalized for conservative therapy and was discharged on January 16, 1969. Her symptoms abated sufficiently so that she returned to work a month later. Her symptoms of nerve root irritation persisted, however, so she was readmitted for surgery in May of 1969. A low back exploration of the suspected disc spaces and nerve roots disclosed no evidence of rupture of the disc spaces, herniation of nucleus material, or tension of the nerve roots. A fusion of the degenerated joints was

performed to stabilize them and to relieve the radiculitis. Claimant was thereafter free of leg pain but her low back discomfort, although diminished, has persisted.

Dr. Sosebee had had no dealing with claimant before December 31, 1968, and his diagnosis was made on his examination findings and on the assumption, based on information from claimant, that she had suffered only one prior episode of back pain, in December of 1966 at her place of employment, which was treated by Dr. Bradley and lasted only for a few days. The medical history disclosed by claimant to Dr. Sosebee included, also, a tonsillectomy at the age of twelve, a hysterectomy in 1959, a diagnosis of diabetes milletus in 1962, hypertension, and a bilateral adrenalectomy.

In her testimony, claimant admitted that she had experienced back pains when the incision left by the adrenalectomy became infected, but that the site of the pain was not in the lumbar region, the area affected by the accident for which she makes claim. She also admitted that on January 16, 1968, more than a year after the employment injury of December, 1966, she consulted Dr. Bradley for intermittent back pain. This history was confirmed by the written report of Dr. Bradley given in evidence. On cross-examination, claimant admitted to having had prior lumbar back pain and tingling down the right leg, but not with the severity since the accident of December 30, 1968. The claimant acknowledged also that on May 16, 1966, she complained at the University of Missouri Medical Center Clinic that she was experiencing pain over the sinus area of the adrenalectomy wound, as the result of which corrective surgery was then performed. She did not recall then having complained also of severe pain over the lumbar area. The records of May 16, 1966 of the University of Missouri Medical Center Surgery Clinic contains this entry by the staff physician, Dr. J. H. Landor:

Pt. [claimant] called for appointment because of continuous draining from wound sinus and because of severe back pain. Pain is in low lumbar area right over spine. Hurts to get up and has had occasional radiation down sciatic distribution. Worse in AM when she gets out of bed.

Sinus probed and no suture material found again. The tract goes laterally and I feel certain it has nothing to do [with] back pain.

Imp: ? disc or degenerative arthritis. Disp: bed board

The claimant acknowledged that when she entered the hospital in September of 1965 for the adrenalectomy, she had complained of swelling of the feet and legs.

In response to a hypothetical question by counsel for claimant which posited a pre-existing degenerative disease, the accident, sudden severe pain in the low back radiating to the right leg, the prior episode of bilateral muscle spasm treated by Dr. Bradley in December of 1966 and the complaint of back pain to Dr. Bradley in January of 1968, the conditions of diabetes and hypertension, the tonsillectomy, hysterectomy, adrenalectomy associated with complaint of back ache, the history of claimant's complaint, the findings of examination and the treatment accorded, Dr. Sosebee testified to a reasonable medical certainty that the accident of December 30, 1968 caused the acute degenerative disc condition and irritation of the nerve roots in claimant's low back which he found, and estimated her permanent partial disability at 25% of the body as a whole. From the answer to the hypothetical question given by Dr. Sosebee and from the cross-examination which developed, it is plain that his opinion of causation and permanency between the accident and the condition of disability he found was given on the assumption that, except for the one episode of back pain in December of 1966 related to him by claimant, her degenerative disc condition had been asymptomatic until the accident of December 30, 1968. The response of Dr.

Sosebee to the hypothetical question posed on direct examination was:

> I feel that the lady did have degenerative disc disease, with a past history of difficulty before. My record showed only one episode of previous back pain. The hypothetical question as asked here and as stated with the past history as the gentleman here stated, I feel Mrs. Griggs had a degenerative disc disease that she developed as a result of this incident described; an irritation to the nerve roots in her low back with radiation into her leg.

On cross-examination Dr. Sosebee acknowledged that he had made his diagnosis on the basis of the history of one prior back difficulty given him by claimant. He acknowledged also that claimant's congenital back anomaly had pre-existed the accident for a number of years and that, because surgery disclosed no frank herniation or other pathology, he had concluded that the degenerative disc disease was the cause of claimant's nerve root irritation and sciatic pain and, on the assumption that claimant had been asymptomatic except for the one instance she related to him, the accident of December 30, 1968 caused the aggravation of the degenerative back condition. The interrogation of Dr. Sosebee by counsel for the employer-insurer then took this course:

Q. Doctor, if she had some complaints, pain in her low back, to Dr. Bradley during the time period of December, 1966, through October of 1968, this would indicate that she is having periodic pain and trouble in her back, would it not?

A. I would assume so.

Q. Now, Doctor, at the University of Missouri Medical Center she was seen on March 9 to June 6, 1966. (Interruption) . . . She was in there generally, Sir, for the condition of adrenalectomy, high blood pressure, and everything else. I am referring to a clinical note of May 16, 1960, "Patient called for appointment because of continuous draining pain at the wound site and . . .", I am quoting exactly, ". . . because of severe back pain. Pain is in the lower lumbar area right over the spine. It hurts to get up and she has occasional radiation down the sciatic distribution. Worse in the A.M. when she gets out of bed. Sinus something (sic) and no suture something (sic) found again. The tract goes laterally, and I feel certain it has nothing to do with the back pain. Impression: Disc or degenerative arthritis. Disposition: Bed board. No lifting or bending over. To use good posture."

. . . . . .

Q. Doctor, those old symptoms are significant symptoms of, indicating root irritation, are they not.

A. Yes.

. . . . . .

Q. . . . But you do know, Sir, that if you had X-rayed her back on that date, you would have seen evidence of this congenital anomaly which you did see on December 30, 1968.

A. Correct.

Q. And you would have evidence of degeneration in the disc space, would you not?

A. In '66?

Q. Yes.

A. I don't know. Possibly so.

(Interruption)

Q. . . . I will ask you this: If she was symptomatic, had these definite X-ray changes from '66 to '68, symptomatic to the extent that she had sciatic distribution pain, that she had bilateral muscle spasms, and

she was on a regimen of cortisone, would you have diagnosed her condition with the same diagnosis as now?

A. Yes.

Q. Now, Doctor, if she had the same diagnosis, we know that she would have the condition and the complaint, isn't that correct?

A. In '66?

Q. Yes.

A. I think so.

Q. She would have had disability, would she not?

A. I would think so.

. . . . . .

Q. Doctor, if in the time period of 1966, the dates I have referred to therein, through the records of Dr. Bradley in 1968, she had periodic complaints of low back pain and sciatic radiation into the right leg and the right thigh, she would have aggravation of this pre-existing degenerative condition going on symptomatically in her body at those times. Is that correct, Sir?

(Interruption)

A. I think it is extremely, it is very possible.

. . . . . .

Q. And if the individual had low back pain associated with sciatic radiation, she would then have had in this time period a nerve root irritation going on, would she not? the same as she has now? the same type she has now?

A. It is certainly possible.

Q. Is there any reason to believe, with that set of facts, that she would not have had that condition going on in her body at that time?

A. Same answer. I see no difference.

. . . . . .

Q. And did I ask you on your deposition, Doctor, page 28, "Now if she had come in and had the findings, the clinical findings and symptomatic complaints that I have you without surgery (sic), if she had had those complaints before December the 30th of '68, am I correct in saying that you would have recommended surgery to her at that time? Answer: I believe so." (Interruption). And would your answer to that question today be the same as it was then?

A. On an assumption, yes.

. . . . . .

Q. *Doctor, insofar as disability is concerned, am I correct to say that any attempts on your part to ascribe all or part of the 25 per cent disability which you have found in this lady's body to the incident of December 30, 1968, would be medical speculation, conjecture and surmise on your part, Sir?*

A. *That is correct.*

Following this climactic response, counsel for claimant undertook to rehabilitate the opinion of Dr. Sosebee on redirect examination:

Q. [R]eferring back to Mr. Evans' [counsel for employer-insurer] questions about that she may have made complaints, back complaints, previously, about back pain, and that Dr. Bradley saw her on several occasions, and at least on one occasion there was bilateral muscle spasm. Do you have an opinion whether or not that could have been a temporary aggravation?

A. Certainly it could have been temporary.

Q. Since the symptoms did not persist, that would be what you would base your opinion on, is that right?

A. That's right.

Q. And this nerve root irritation I guess would be the temporary aggravation, to some extent, the nerve root would be irritated and it would cause temporary aggravation.

A. That is correct.

Q. So the extent of the irritation would be whether it would be permanent or not, is that correct?

A. Partially, yes, Sir.

.    .    .    .    .    .

Q. In regard to what Mr. Evans asked you, she could very well have not had any disability in her back prior to the time you saw her.

A. It is as reasonable to assume that as it is that she does.

Final recross-examination brought these responses from Dr. Sosebee:

Q. We know, first, that she had the anomaly condition in her spine before December 30, 1968. Now, from the history she gave you, she asked you to assume she had no prior complaints other than the one episode, isn't that correct?

A. That is correct.

Q. If in fact she had multiple episodes of pain and complaints in the same area of the body of which she is now complaining, namely, the low back and the right leg, then Doctor, at those times she would have had a disability in her back, isn't that correct?

(Interruption)

A. It is certainly reasonable to assume that she had some disability.

Q. Since you didn't see her before December 30, 1968, since we know she had the anomaly condition, since we have evidence to show that it was symptomatic in the same areas of the body, she could well have had 25 per cent disability of her spine, *she could well have had 25 per cent permanent partial disability of her spine and body before December 30, 1968, isn't that correct?*

(Interruption)

A. *It is certainly reasonable to assume.*

Q. *And within a reasonable degree of medical certainty, you have no way of telling where the 25 per cent came from, from the incident of December 30, 1968, or before that time, is that correct?*

(Interruption)

A. *That is entirely correct.*

▮▮▮ A party who claims benefits under the workman's compensation law has the burden to prove that an accident occurred and that it resulted in injury. Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62[3] (banc 1947). A claimant must show not only causation between the accident and the injury but also that a disability resulted and the extent of such disability. Smith v. National Lead Co., 228 S.W.2d 407, 412[4] (Mo.App.1955). While proof of cause of injury is sufficiently made on reasonable probability [Smith v. Terminal Transfer Company, 372 S.W.2d 659, 664[7] (Mo.App.1963)], proof of permanency of injury requires reasonable certainty. Davis v. Brezner, 380 S.W.2d 523, 538[6–9] (Mo.App.1964). Whatever may be the quantum of proof the law imposes on a given issue in a compensation case, however, such proof is made only by competent substantial evidence and may not rest on surmise or speculation. The contradictory testimony of a single witness relied on to prove a fact does not constitute substantial evidence and is not probative of that fact in the absence of an explanation or other

circumstances tending to explain the contradiction. Morgan v. Krey Packing Company, 454 S.W.2d 939, 941[1] (Mo.App. 1970); Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647[6] (1933).

■ The award of the Industrial Commission rests upon the finding that the testimony of Dr. Sosebee was competent substantial evidence that the accident of December 30, 1968 caused the claimant injury and disability, an acute aggravation of a degenerative condition of her back amounting to 25% permanent disability of her body. That testimony, however, gives rise to two utterly inconsistent inferences—that claimant's disability could as well have pre-existed the accident as have been caused by it—and does not allow a substantial basis from which a compensable injury can be inferred. "The rule is that the burden of proof rests on the claimant in a workmen's compensation proceeding, and it is not sufficient for recovery to show only that the injury complained of resulted either from one or the other of two causes, for one of which, but not the other, the employer would be liable. The claimant must produce evidence from which it reasonably may be found that such injury resulted from the cause for which the employer would be liable." Groce v. Pyle, 315 S.W.2d 482, 489[3] (Mo.App.1958); Seabaugh's Dependents v. Garver Lumber Mfg. Co., *supra,* 200 S.W.2d 1. c. 62; Downs v. A. C. F. Industries, Incorporated, 460 S.W.2d 293, 295 (Mo.App.1970); Welker v. MFA Central Co-operative, 380 S.W.2d 481, 487[6] (Mo.App.1964).

■ The claimant argues, however, that Dr. Sosebee never wavered in his opinion that she had suffered a 25% permanent bodily disability from an aggravation of the pre-existing condition and that his inability to ascribe how much of the disability was caused by accident could not defeat claimant's recovery, but left a question of fact for the Industrial Commission on her testimony that she was asymptomatic prior to December 30, 1968, a question

reasonably resolved in her favor by the award which determined that all of her disability was referable to the accident. It is the rule that where, from a fair consideration of other facts and circumstances, the contradictory statements of a witness can be explained, it is for the trier of fact to determine which version shall be accepted as true. Pate v. St. Louis Independent Packing Company, 428 S.W.2d 744, 752[11–13] (Mo.App.1968); Morgan v. Krey Packing Company, *supra,* 454 S.W.2d 1. c. 941[2]. The only other evidence of injury, disability and causation came from the claimant herself. If we assume that testimony proved claimant was asymptomatic before the event in dispute [notwithstanding her admissions of prior episodes of bilateral muscle spasm, pain and tingling down the right leg and the documentary evidence of symptoms described to the doctor on cross-examination, and uncontradicted although unremembered by claimant], it was not sufficient evidence of causation of the injury she claims. For an injury to be compensable the evidence must establish a causal connection between the accident and the injury. The testimony of a claimant or other lay witness can constitute substantial evidence of the nature, cause and extent of the disability when the facts fall within the realm of lay understanding. Davis v. Brezner, *supra,* 380 S.W.2d 1. c. 528 [11–13]; Smith v. Terminal Transfer Company, *supra,* 372 S.W.2d 1. c. 665[10]. "[A]n injury may be of such a nature [however] that expert opinion is essential to show that it was caused by the accident to which it is ascribed." Nick v. International Shoe Co., 200 S.W.2d 590, 593[5, 6] (Mo.App.1947). Where the condition presented is an acute aggravation of a pre-existing degenerative back condition with nerve root irritation, or any other sophisticated injury, which requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, the proof of causation is not within the realm of lay understanding nor—in the absence of expert

opinion—is the finding of causation within the competency of the administrative tribunal. Downs v. A. C. F. Industries, Incorporated, *supra,* 460 S.W.2d 1. c. 296; Welker v. MFA Central Co-operative, *supra,* 380 S.W.2d 1. c. 487; Starcke v. Krey Packing Company, 426 S.W.2d 692, 698 (Mo.App.1968).

■ The burden was on the claimant to prove that the permanent disability for which she seeks compensation is from a cause for which the employer is liable. She has failed that proof. The finding of the Industrial Commission that claimant's permanent disability was caused by the event of December 30, 1968 was mere guesswork and speculation, thus to that extent the award of compensation does not rest on competent substantial evidence and may not stand.

■ While so concluding, we determine also that the finding of the Industrial Commission that the event of December 30, 1968 constituted a compensable accident arising out of and in the course of employment which resulted in a temporary disability to claimant for which medical expenses were reasonably incurred is supported by the record as a whole. The parties have stipulated that the records in the case disclose that the award entered by the Industrial Commission for $2470.50 for

medical aid and for compensation for a healing period of 30 weeks at the rate of $57.00 per week, based upon the oral testimony of the claimant, is in error and is properly calculated at $2407.40 for medical expenses reasonably incurred and a healing period of 23⁴⁄₇ weeks at the rate of $57.00 per week for a total of $1343.57 as temporary disability compensation. The award of the Industrial Commission as to medical expenses and temporary disability compensation is ordered modified as stipulated.

It has been brought to our notice by formal Suggestion of Death and Motion for Substitution that the respondent employee has died during the pendency of this appeal and that her surviving husband, Paul L. Griggs, is entitled to proceed as her substitute in this action. Accordingly, we have by separate order designated the substitution of parties.

The cause is remanded to the circuit court with directions that the cause be further remanded to the Industrial Commission with directions to enter award in favor of the respondent as to medical expenses and temporary disability compensation in the amounts as modified and for entry of award in favor of the employer and insurer on the employee's claim for permanent disability compensation.