

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

MARY KAY HAZELTINE,            )    No. ED107630
)
       Appellant,               )
)
vs.                             )    Appeal from the Labor and
)    Industrial Relations Commission
STATE OF MISSOURI, SECOND      )
INJURY FUND,                )
)
       Respondent.           )    Filed: October 22, 2019

## Introduction

Mary Kay Hazeltine ("Claimant") appeals from the final award of the Labor and Industrial Commission ("Commission") denying her claim against the Second Injury Fund ("Fund"). On appeal, Claimant contends the Commission erred in denying her claim because it incorrectly found she: (1) did not have preexisting permanent disabilities that were a hindrance or obstacle to her employment before the work injury she sustained on June 15, 2012, and (2) failed to prove the nature and extent of her preexisting permanent disabilities and also the combination of her preexisting permanent disabilities and primary injury resulted in permanent total disability. We find the Commission's award concluding the Fund is not liable for Claimant's permanent and total disability is not supported by sufficient competent evidence. The decision of the Commission is reversed and remanded.

<h1 style="text-align:center">Factual and Procedural Background[1]</h1>

Claimant filed a claim for compensation on July 17, 2012, claiming she was injured because of a work accident that occurred on an assembly line while she worked for General Motors ("Employer") on June 15, 2012. Claimant also filed a claim against the Fund based upon preexisting disabilities. Claimant alleged she experienced significant psychiatric trauma as a victim of physical and sexual abuse and after her daughter's rape and murder in 1995.

<u>June 15, 2012 Injury</u>

Claimant began working for Employer as a summer worker on June 4, 2012. Claimant performed a variety of jobs for Employer, most of which involved the assembly of vehicles. While at work on June 15, 2012, Claimant was working on the assembly line when a tool rack suspended from the ceiling hit her on the head and left shoulder. Claimant did not recall being struck in the head, but she recalled being told by a co-worker she was struck. Claimant was taken to the emergency room. The emergency room doctor diagnosed her with a head injury, a head laceration, a left shoulder strain, and neck pain.

Claimant returned to work after the accident, but she struggled to keep up with the job demands. Employer's plant was very noisy, which caused Claimant to suffer headaches and lose

---

[1] As noted by the Fund, Claimant's statement of facts does not meet the requirements of Rule 84.04. Rule 84.04(c) provides that "[a]ll statements of facts shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." MO. SUP. CT. R. 84.04(c). A statement of facts that does not specifically reference relevant portions of the record violates Rule 84.04(c). *Hubbard v. Schaefer Autobody Ctrs., Inc.*, 561 S.W.3d 458, 461 (Mo. App. E.D. 2018). In several instances, Claimant failed to indicate specific references to the legal file or transcript. In those instances where Claimant indicated specific references to the legal file or transcript, some are incorrect. "Failure to substantially comply with Rule 84.04 is grounds for dismissal." *Rademan v. Al Scheppers Motor Co.*, 423 S.W.3d 834, 835 (Mo. App. W.D. 2014). However, "we prefer to dispose of a case on the merits whenever possible." *Scott v. Potter Elec. Signal Co.*, 310 S.W.3d 311, 312 (Mo. App. E.D. 2010). Because the facts as presented in Claimant's brief are readily understandable, we exercise our discretion to review her non-compliant brief *ex gratia*. *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017).

concentration. Claimant worked light duty for one week and worked one day of full duty before she was fired.[2] She has not returned to work since Employer fired her.

<u>Psychiatric Trauma Preexisting June 15, 2012</u>

Before the accident, Claimant experienced several psychiatric traumas. In high school in the 1970s, she was walking down the street in her neighborhood when a man pulled her into his basement and raped her. She was physically abused by a former partner. In 1995, a fellow student raped and murdered Claimant's daughter in a high school restroom. Claimant attended two counseling sessions after her daughter's murder, but because they did not help, she did not return. Claimant left her job at Hussmann Corporation, where she worked on the assembly line, in 1995 because of her daughter's death. A few years later, Claimant moved out of the area so she would not be near the school where her daughter was murdered. Claimant's primary care physician diagnosed her with mild anxiety and depression with insomnia after her daughter's death. He prescribed her Xanax and Ambien. In the years following her daughter's death, Claimant was heavily involved in the prosecution of her daughter's murderer.

<u>Administrative Hearing</u>

Claimant filed a claim for compensation against Employer and the Fund on July 13, 2012. Claimant settled with Employer for permanent partial disability of 4.5% of the body as a whole referable to the head, 10% of the body as a whole referable to her psychiatric disability, and 5.5% of the body as a whole referable to the left shoulder. The settlement totaled $30,000 and was approved by an Administrative Law Judge ("ALJ") on February 9, 2016. The ALJ tried Claimant's remaining claim against the Fund for permanent and total disability benefits on

---

[2] In her deposition, Claimant testified she was terminated on July 3, 2012, approximately eighteen days after the accident. At her administrative hearing, Claimant testified she did not remember her deposition testimony and instead testified she worked up to the eighty-ninth day of her employment before she was fired, which was the last day she could be fired without cause.

3

March 6, 2018. Claimant offered the deposition testimony of three medical experts, the deposition testimony of a vocational rehabilitation expert, and her own deposition and hearing testimony into evidence. She also offered medical records into evidence that related to her treatment both before and after the accident. The Fund offered no evidence. The testimony Claimant presented is summarized as follows.

*Claimant's Testimony*

Claimant testified her daughter's rape and murder in 1995 was the reason she left her employment at Hussmann and stayed out of the workforce from 1995 until 2012. She testified she did not seek employment again until 2012 because she was not handling her daughter's death well. Shortly after her daughter's murder, Claimant abused alcohol. Her alcohol abuse resulted in several driving while intoxicated ("DWI") convictions. Because of her convictions, Claimant successfully completed the court-mandated Substance Abuse Traffic Offender Program and attended Alcoholics Anonymous and counseling sessions. Claimant testified she helped raise her four grandchildren when the first of them was born in 2004. She testified she would often watch her grandchildren daily and she had custody of one of her granddaughters for the first eighteen months of her life. She testified she returned to the workforce in 2012 because her grandchildren were starting school.

Claimant testified she had no trouble completing her job duties and working overtime for Employer before the accident. However, after her accident, Claimant testified her head "always hurts." She described her headaches as being "like somebody's pulling a shade down" over her eyes. Claimant testified she also experiences buzzing in her ears. When Claimant gets a headache, she has to go to a quiet place to lie down. Bright lights, loud noises, and crowds trigger Claimant's headaches. Claimant avoids driving and leaving the house. Claimant testified

4

she encounters more triggers for her headaches when she is out rather than at home. Claimant was never treated for headaches before the accident. Claimant testified that, after the accident, her Xanax prescription was increased from two pills to three pills per day, although her medical records do not reflect this change.

Claimant also testified that, following her injury, she cannot move her shoulder in certain positions; she puts her clothes on differently than before the accident. She also testified she developed dizziness and vertigo after the accident and her sleep habits have changed. Before the accident, Claimant slept only five to seven hours per day. After the accident, Claimant sleeps twelve or more hours per day. She testified she never experienced memory problems before the accident. After the accident, Claimant testified she has memory problems and they continue to worsen. She also testified she experiences mood swings and panic attacks since the accident.

*Expert Testimony*

Claimant offered the deposition testimony of Dr. Volarich into evidence. Dr. Volarich examined Claimant on November 4, 2013, and rated Claimant as having 10% disability of the body as a whole due to her closed head trauma causing concussion with post-concussive headaches, tinnitus, and vestibular dysfunction. He also found Claimant had 15% disability of the left shoulder due to rotator cuff tendinitis. In his deposition, Dr. Volarich testified the accident was the prevailing factor causing her symptoms, need for treatment, and resulting disability. Based on her medical records, Dr. Volarich also found Claimant suffered from anxiety and depression, however, he deferred to a psychiatrist for any psychiatric evaluation and diagnosis. Dr. Volarich testified that, in his thirty-four years of experience as a medical doctor, patients with depression have an "altered pain threshold" that makes subsequent injuries they sustain "worse." He testified "[t]hey perceive pain differently, more intensely, lasting longer

5

periods of time, needing more medication, [and] more time for therapy to try to resolve or heal conditions."

On July 15, 2015, after reviewing Dr. Liss' and Dr. Sky's report, Dr. Volarich issued an addendum to his initial report. In that addendum, he stated he found Claimant's psychiatric disabilities identified by Drs. Liss and Sky combined with the physical disabilities he rated on November 4, 2013, to create a substantially greater disability than the simple sum of the disabilities. On August 8, 2017, after reviewing Mr. England's vocational rehabilitation evaluation, Dr. Volarich issued a second addendum in which he stated he found Claimant permanently and totally disabled, primarily because of her psychiatric conditions.

Claimant offered the deposition testimony of Dr. Sky into evidence. Based upon Claimant's subjective complaints, history, and medical records, Dr. Sky diagnosed Claimant with single episode major depression, anxiety disorder, post-concussive disorder, and alcohol abuse disorder in remission on April 1, 2014. Dr. Sky rated Claimant as having 25% permanent psychiatric disability preexisting the accident. He opined Claimant's preexisting psychiatric disability was "exacerbated" another 75% by the accident. Dr. Sky further found Claimant could not function in the open labor market due to her poor focus, lack of concentration, anxiety, and anhedonia.[3] Dr. Sky found these symptoms were caused by a combination of Claimant's preexisting psychiatric disability and the accident's exacerbation of that psychiatric disability. On cross-examination, Dr. Sky noted he did not review any "psychiatric" treatment records predating Claimant's work accident because several of her primary care physician's treatment records from 1995 to 1996 were destroyed in a fire and made unavailable. He noted in his report, however, that the availability of such records would not have materially changed his

---

[3] "Anhedonia" is defined as "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." *Anhedonia*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/anhedonia (last visited Sept. 23, 2019).

6

diagnosis or disability rating of Claimant. Dr. Sky indicated Claimant did not specify the psychiatric symptoms she experienced before the accident, but he recalled Claimant told him she experienced a generalized feeling of sadness. After the accident, Dr. Sky noted Claimant experienced several symptoms, including loss of focus, loss of concentration, and headaches.

Claimant offered the deposition testimony of Dr. Liss into evidence. Based on the responses Claimant provided on written questionnaires and his interview with Claimant, Dr. Liss diagnosed Claimant with post-traumatic stress disorder ("PTSD") and associated anxiety and depression because of the accident on June 29, 2015. He also diagnosed Claimant with PTSD and associated anxiety and depression preexisting the accident. He reported the physiologic symptoms of her PTSD included "startle, sleeplessness, anxiety, and panic." Dr. Liss opined the core of Claimant's PTSD began with her daughter's murder but the accident "magnified" her symptoms. Dr. Liss rated Claimant as having 50% preexisting disability related to her PTSD. He rated Claimant as having 50% post-accident disability due to the aggravation of her PTSD, depression, and anxiety. He testified PTSD is neither treatable nor curable.

In his deposition, Dr. Liss opined Claimant's preexisting PTSD was serious enough to constitute an obstacle or hindrance to employment or reemployment. Dr. Liss testified Claimant is totally and permanently disabled due to a combination of her preexisting disability and the disability resulting from the accident. On cross-examination, Dr. Liss admitted he did not separately list the PTSD symptoms Claimant experienced before and after her work accident in his report; instead, he listed all her symptoms related to PTSD, depression, and anxiety. Dr. Liss testified that, while there is an overlapping in the symptoms Claimant experienced, "new and exaggerated symptoms have occurred since the injury at work." He further testified that Claimant's preexisting PTSD "feed[s] on" her post-accident PTSD. Dr. Liss testified Claimant

had panic attacks with flashbacks about her daughter's murder before the work accident, but he did not list these symptoms in his report. Dr. Liss confirmed the only psychiatric treatment Claimant received for any length of time was medication from her primary care physician. Dr. Liss stated that, had he seen Claimant before the accident, he would have thought she was permanently and totally disabled due to the horrific nature of her daughter's murder and her continued involvement in the subsequent prosecution of her daughter's murderer.

Lastly, Claimant offered the deposition testimony of Mr. England, a vocational expert, into evidence. On March 16, 2015, Mr. England evaluated Claimant, and he issued his report on April 6, 2015. Mr. England concluded that, before the accident, she was able to compete for work in the open labor market because she had applied and been hired at Employer's plant and was working regularly. Mr. England concluded there was no physical reason Claimant could not work. However, based on Dr. Sky's and Dr. Liss' reports, Mr. England thought Claimant was permanently and totally disabled and could not compete for employment from a psychiatric standpoint after the accident. Mr. England also testified that Claimant's presentation would make it difficult for her to be hired; she had a flat affect, she appeared anxious, and she requested the lights in his office be turned off due to her photo-sensitivity during his evaluation of her.

On cross-examination, Mr. England stated he did not review any medical records that predated Claimant's work injury. Mr. England indicated Claimant did not report any specific psychiatric symptoms she experienced relating to her daughter's death until after her work accident. Mr. England also stated Claimant did not indicate she had problems with focus and concentration before the work accident.

The ALJ issued her award on May 23, 2018, denying Claimant permanent total disability benefits from the Fund. The ALJ concluded Claimant did not "meet her burden of proving the nature and extent of any alleged preexisting psychological disability by a reasonable degree of certainty." The ALJ found, "other than testifying very briefly about leaving her job after her daughter's death, going to a therapist twice, and receiving Ambien and Xanax from her primary care doctor, Claimant did not testify about any actual symptoms prior to her work accident." The ALJ also found against Claimant because she "failed to offer any specific testimony, either at hearing or in her deposition, regarding how or whether her alleged preexisting psychiatric conditions constituted a hindrance or obstacle to employment."

The ALJ found the expert testimony Claimant offered to support her contention of permanent and total disability due to the combination of her preexisting and primary disabilities was "not persuasive." The ALJ found the experts not persuasive because they had "little or no specific history of any prior psychiatric symptoms or problems" and only had preexisting psychiatric treatment records from Claimant's primary care physician to consult in reaching their opinions. The ALJ found Dr. Liss' testimony was not persuasive because he never mentioned Claimant suffered any specific preexisting psychiatric symptoms or limitations and some of his answers contradicted each other.[4] Similarly, the ALJ found Dr. Sky's testimony was not persuasive because he did not recall Claimant reporting any specific preexisting symptoms other than Claimant drinking excessively after her daughter's death. The ALJ noted Dr. Volarich made no assessment of psychiatric diagnosis, and Claimant did not provide Mr. England any

---

[4] The ALJ found Dr. Liss' response to whether he separated the PTSD symptoms Claimant experienced before the accident from the PTSD symptoms in his report was contradictory. The ALJ noted that Dr. Liss he did not separate the symptoms in his report, but then testified in his deposition Claimant had panic attacks with flashbacks about her daughter's murder before the accident.

history of specific mental or physical problems in the years between her daughter's death and her employment with Employer.

Claimant appealed the award to the Commission. A majority of the Commission found the ALJ's award was supported by sufficient competent evidence and affirmed the ALJ's decision.

Commissioner Curtis E. Chick, Jr. filed a dissenting opinion. He found Claimant proved the combination of her preexisting disabilities and primary injury caused permanent total disability, thus entitling her to relief against the Fund. Commissioner Chick concluded the majority of the Commission used an incorrect analysis in concluding that Claimant was not entitled to relief against the Fund. Commissioner Chick disagreed that Claimant had to prove her preexisting disabilities constituted a hindrance or obstacle to employment or reemployment; instead, Commissioner Chick maintained Claimant was only required to prove her preexisting disabilities had the "*potential* to combine with a work-related injury in the future so as to cause a greater degree of disability than would have resulted in the absence of the condition." (alteration in original). Given Claimant's credible, uncontradicted testimony and the unanimous opinions of all expert testimony in the record, Commissioner Chick viewed the majority of the Commission's award as contrary to the overwhelming weight of the evidence.

Claimant appeals the Commission's decision.

## Standard of Review

Our review of the Commission's decision is governed by article V, section 18 of the Missouri Constitution and § 287.495.[5] *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 774 (Mo. App. E.D. 2015). In a workers' compensation case, this Court reviews

---

[5] All references are to RSMo Cum. Supp. (2013) unless otherwise indicated.

10

only questions of law and may modify, reverse, remand for rehearing, or set aside the Commission's award only upon any of the following grounds and no other:

(1) That the [C]ommission acted in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the [C]ommission do not support the award;
(4) That there was not sufficient competent evidence in the record to warrant making the award.

§ 287.495.1. It is not necessary for us to view the evidence in the light most favorable to the Commission's award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). Rather, this Court examines the record as a whole to determine "whether there is 'sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence.'" *Highley v. Von Weise Gear*, 247 S.W.3d 52, 55 (Mo. App. E.D. 2008) (quoting *Hampton*, 121 S.W.3d at 222-23).

The Commission's factual findings are binding and conclusive to the extent they are supported by sufficient competent evidence and were reached in the absence of fraud. *Archer v. City of Cameron*, 460 S.W.3d 370, 374 (Mo. App. W.D. 2015) (citing *Coday v. Div. of Emp't Sec.*, 423 S.W.3d 775, 778 (Mo. banc 2014)). However, "[w]e review decisions of the Commission which are clearly interpretations or applications of law for correctness without deference to the Commission's judgment." *Motton v. Outsource Intern.*, 77 S.W.3d 669, 672 (Mo. App. E.D. 2002) (quoting *West v. Posten Const. Co.*, 804 S.W.2d 743, 744 (Mo. banc 1991)). This Court reviews the findings of the Commission, not the ALJ. *Lawrence v. Anheuser Busch Cos. Inc.*, 310 S.W.3d 248, 250 (Mo. App. E.D. 2010). Where, as here, the Commission affirms and incorporates the ALJ's decision in its award, this Court reviews the findings of the ALJ as adopted by the Commission. *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902, 906 (Mo. App. E.D. 2008).

11

**Discussion**

Statutory Framework

"Section 287.220 creates the Fund and imposes liability on the Fund in certain cases of permanent disability where there is a preexisting disability." *Lewis v. Treasurer of State*, 435 S.W.3d 144, 152 (Mo. App. E.D. 2014) (footnote omitted) (citing § 287.220 and *Hughey v. Chrysler Corp.*, 34 S.W.3d 845, 847 (Mo. App. E.D. 2000)). The purpose of the Fund is "to encourage the employment of individuals who are already disabled from a pre[]existing injury, regardless of the type or cause of that injury." *Glasco v. Treasurer of State-Custodian of Second Injury Fund*, 534 S.W.3d 391, 397 (Mo. App. W.D. 2017) (citing *Treasurer of State-Custodian of Second Injury Fund v. Witte*, 414 S.W.3d 455, 460 (Mo. banc 2013)). To further that purpose, § 287.220 limits the employer's liability, when a work-related injury occurs, to only that part of the disability attributable to the work injury. *Id.* (citing *Witte*, 414 S.W.3d at 460). "Any disability attributable to the combination of the work injury with preexisting disabilities is compensated, if at all, by the Fund." *Id.* (footnote omitted) (citing *Witte*, 414 S.W.3d at 460 and § 287.220.2).

For the Fund to be liable, a claimant must have a permanent partial disability existing at the time of the primary injury and was so serious as to constitute a hindrance or obstacle to employment or reemployment. *Lawrence v. Treasurer of State-Custodian of 2nd Injury Fund*, 470 S.W.3d 6, 13 (Mo. App. W.D. 2015) (citing *Concepcion v. Lear Corp.*, 173 S.W.3d 368, 371 (Mo. App. W.D. 2005)); § 287.220.1. The Fund is liable for the portion of disability attributable to the preexisting condition where a claimant establishes either that: (1) the preexisting partial disability combined with a disability from a subsequent injury to create a permanent and total disability or (2) the combination of his present compensable injury and his preexisting permanent

12

partial disabilities create an overall disability greater than the sum of the disabilities independently.[6] *Highley*, 247 S.W.3d at 55.

In this case, Claimant seeks recovery for permanent total disability benefits under the first set of circumstances. Section 287.020.6 defines "total disability" as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." § 287.020.6. "An employee is permanently and totally disabled if no employer in the usual course of business would reasonably be expected to employ the employee in his or her present physical condition." *Pennewell v. Hannibal Regional Hosp.*, 390 S.W.3d 919, 924-25 (Mo. App. E.D. 2013) (citing *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 616 (Mo. App. W.D. 2009)). Before the Fund will be liable for permanent total disability, the claimant must establish first the extent or percentage of the permanent partial disability resulting from the last injury alone and then the combination of the last injury and a prior permanent partial disability resulted in permanent and total disability. *Lawrence*, 470 S.W.3d at 14. For purposes of calculating permanent total disability benefits, "[a] claimant's preexisting disabilities are irrelevant until [the] employer's liability for the last injury is determined." *Gleason v. Treasurer of State of Missouri-Custodian of Second Injury Fund*, 455 S.W.3d 494, 498 (Mo. App. W.D. 2015) (quoting *Lewis*, 435 S.W.3d at 157).

### Point I

In her first point relied on, Claimant argues the Commission erred in finding she did not have preexisting permanent disabilities that were a hindrance or obstacle to her employment. Claimant primarily argues this conclusion was improperly reached because the Commission

---

[6] For a detailed analysis of the differences in proving a claim for permanent partial disability and proving a claim for permanent and total disability, see *Lewis v. Treasurer of State*, 435 S.W.3d 144, 156-59 (Mo. App. E.D. 2014).

focused on the extent to which her preexisting disabilities caused difficulty in the past and ignored the potential for her preexisting disabilities to combine with a work injury in the future.[7]

For the Fund to be liable in a workers' compensation claim, it is well-established that "a claimant must have a permanent partial disability that existed at the time of the primary injury and that was so serious as to constitute a hindrance or obstacle to employment." *Glasco*, 534 S.W.3d at 397 (internal quotations omitted); § 287.220.1. When determining whether a claimant has satisfied the "hindrance or obstacle" requirement,

> the proper focus . . . is not on the extent to which the condition has caused difficulty in the past; it is on the *potential* that the condition may combine with a work related injury in the future so as to cause a greater degree of disability than would have resulted in the absence of the condition.

*Wuebbeling v. W. Cty. Drywall*, 898 S.W.2d 615, 620 (Mo. App. E.D. 1995) (alteration in original). If a cautious employer could reasonably foresee that the preexisting injury may combine with a future work related injury to result in more disability than would have resulted without such a preexisting condition, then a preexisting injury constitutes "a hindrance or obstacle to employment or reemployment." *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57, 60 (Mo. App. E.D. 1996).

---

[7] As a sub-point in her first point relied, Claimant argues the ALJ erred in failing to follow the correct framework for determining the Fund's liability because it did not first make a factual finding regarding the degree of disability from the last injury alone before considering any preexisting disability and, therefore, the Commission's adoption of the ALJ's findings was in error. *See Forshee v. Landmark Excavating & Equip.*, 165 S.W.3d 533, 537 (Mo. App. E.D. 2005) (internal citations omitted) ("In determining whether the Second Injury Fund has any liability, the first finding is the degree of disability from the last injury considered alone. If the last injury in and of itself renders the employee permanently and totally disabled, then the Second Injury Fund has no liability and the employer is responsible for the entire amount of compensation. Until the degree of disability from the last injury is established, Second Injury Fund liability cannot be determined.). As noted by the Fund, this error is not raised in her point relied on. "Arguments not encompassed by the point relied on are not preserved for review"; thus, Claimant's argument is waived. *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 502 (Mo. App. E.D. 2013) (citing Rule 84.04(e) and *Gamber v. Mo. Dep't of Health & Senior Servs.*, 225 S.W.3d 470, 477 (Mo. App. W.D. 2007)).

The Commission found "Claimant offered no specific testimony, either at hearing or in her deposition, regarding how, or even if, her prior alleged psychiatric conditions constituted a hindrance or obstacle to employment." The Commission found Claimant did not testify about how her preexisting disabilities affected her ability to work before the accident, but she "testified extensively how the primary injury has impacted her ability to work." In addition, the Commission noted the following evidence supported its decision that Claimant did not prove her preexisting disabilities constituted a hindrance or obstacle to employment: Claimant's prescriptions for Xanax and Ambien, which were first prescribed following her daughter's death, did not change in dosage after her work accident; Claimant's alcohol abuse, which began after her daughter's murder and which resulted in several DWI convictions, had ended because she completed the court-mandated Substance Abuse Traffic Offender Program and attended Alcoholics Anonymous and counseling; and although Claimant initially stopped working due to her daughter's death, she remained home to babysit her grandchildren during the time she was out of the workforce.

Based upon the evidence in the record, the Commission's finding that Claimant did not establish her preexisting disabilities constituted a hindrance or obstacle is not supported by sufficient competent evidence and is against the overwhelming weight of the evidence. In her deposition and at the hearing before the ALJ, Claimant testified she left employment at Hussmann because of her daughter's murder in 1995 and moved away from the area. Claimant testified her daughter's murder was the reason she stayed out of the workforce from 1995 until 2012—seventeen years. She testified she did not seek employment again until 2012 because she was not handling her daughter's death well. Immediately following her daughter's murder, Claimant testified her primary care physician diagnosed her with mild anxiety and depression

15

with insomnia and prescribed her Xanax and Ambien.[8] She testified she abused alcohol following her daughter's death and sustained DWI convictions. She also testified regarding her continued involvement in the subsequent prosecution of her daughter's murderer in the years following her daughter's death. This evidence relates to whether Claimant's preexisting disabilities constituted a hindrance or obstacle to employment.

Acceptance or rejection of evidence is generally an issue for the Commission to determine. *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 179 (Mo. App. S.D. 2004) (citing *Sullivan v. Masters Jackson Paving Co.*, 35 S.W.3d 879, 884 (Mo. App. S.D. 2001)). When the Commission reaches its decision by expressly making credibility findings, the Commission may disbelieve uncontradicted and unimpeached testimony. *Id.* (citing *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993)). "This is especially true if there is a substantial basis from all the evidence of a finding that such testimony is untrue." *Raef v. Stock-Hartis, Inc.*, 416 S.W.2d 201, 205 (Mo. App. 1967). But where the record is "wholly silent concerning the Commission's weighing of credibility" and neither the claimant nor the experts testifying on his or her behalf are contradicted or impeached, the Commission "may not arbitrarily disregard and ignore competent, substantial and undisputed evidence." *Houston*, 133 S.W.3d at 179-80 (quoting *Merriman v. Ben Gutman Truck Serv., Inc.*, 392 S.W.2d 292 (Mo. 1965)). In such circumstances, we may find the award was not based upon disbelief of the claimant's testimony. *Copeland v. Thurman Stout, Inc.*, 204 S.W.3d 737, 743 (Mo. App. S.D. 2006).

The Commission did not conclude it disbelieved Claimant's testimony. The Commissioners found "Claimant was a very sympathetic witness at hearing" who had "certainly

---

[8] Claimant's prescriptions for Xanax and Ambien are confirmed in the record within her primary care physician's medical records.

faced tragedy in her life." Because Claimant's testimony was not expressly disbelieved, contradicted, or impeached, we find the Commission erred in disregarding it. Further, we find no merit in the Commission's suggestion that Claimant's leaving the workforce because of her daughter's death was not evidence that her preexisting condition constituted an obstacle or hindrance because she remained home to babysit her grandchildren. The record shows Claimant did not watch her grandchildren until the first of them was born in 2004, almost ten years after she left the workforce. We also find the Commission's criticism that Claimant did not testify as to how her preexisting disabilities "impacted her ability to work" before the work accident is misplaced. The focus of the "hindrance or obstacle" analysis is "not on the extent to which the condition caused difficulty in the past but on the potential that it could combine with a work injury to cause a greater degree of disability than would have resulted without it." *Patterson v. Cent. Freight Lines*, 452 S.W.3d 759, 765 (Mo. App. E.D. 2015) (citing *Knisley v. Charleswood Corp.*, 211 S.W.3d 629, 637 (Mo. App. E.D. 2007)). The fact Claimant was able to perform job duties without difficulty before the work accident does not indicate that her preexisting disabilities were not a hindrance or obstacle to her employment or reemployment. *Dierks v. Kraft Foods*, 471 S.W.3d 726, 740 (Mo. App. W.D. 2015).

The Commission also ignored Dr. Liss' expert testimony in concluding that Claimant "offered no specific testimony" on whether her preexisting disabilities constituted a hindrance or obstacle to employment. Dr. Liss testified:

> Q:     In your medical opinion, within a reasonable degree of medical certainty, the PTSD which [Claimant] had prior to her work injury, was it serious enough to constitute an obstacle or hindrance to employment or reemployment?
>
> A:     Yes, sir.
>
> . . . . .

17

Q: If you had seen Ms. Hazeltine before the 2012 injury, would you still – I think you diagnosed fifty percent [permanent partial disability] due to her [PTSD] prior to June 15, 2012. Correct?

A: Correct.

The Commission's conclusion that no specific testimony was introduced on whether Claimant's preexisting disabilities constituted a hindrance or obstacle to her employment is contrary to and not supported by the evidence as found in Dr. Liss' testimony. The Commission may not arbitrarily disregard or ignore competent, substantial, and undisputed evidence of witnesses not impeached or base its finding on conjecture or its own opinion unsupported by sufficient evidence. *Bond v. Site Line Surveying*, 322 S.W.3d 165, 171 (Mo. App. W.D. 2010). Therefore, the Commission's finding that Claimant did not prove her preexisting disabilities constituted a hindrance or obstacle to employment is in error.

Point II

In her second point relied on, Claimant advances several procedural and substantive arguments regarding the Commission's determinations she failed to prove both the nature and extent of her preexisting disabilities and the combination of her preexisting disabilities and primary injury resulted in permanent total disability. Procedurally, she argues the Commission incorrectly found she needed to prove the nature and extent of her preexisting disabilities. To support her argument, Claimant cites to *Knisley*, 211 S.W.3d 629. Claimant argues this Court held in *Knisley* that, in a permanent total disability claim against the Fund, proof of the nature and extent of preexisting disabilities is not a prerequisite for compensation. However, she also argues that if the nature and extent of her permanent preexisting disabilities must be proven, the Commission incorrectly found she needed to prove the nature and extent of those preexisting disabilities by "a reasonable degree of certainty" standard. Instead, she argues the "more likely

18

to be true than not true," or preponderance, standard set forth in § 287.808 applies.[9] Substantively, Claimant argues the Commission erred in finding she did not prove (1) the nature of her preexisting disabilities by a preponderance of the evidence and (2) her preexisting disabilities combined with her primary injury, resulting in permanent total disability. We will address these multifarious claims in turn.[10]

## Procedural Arguments

Claimant's argument she does not have to prove the nature and extent of her preexisting disabilities before recovering permanent total disability benefits misconstrues the holding of *Knisley*. Claimant correctly cites the rule for establishing permanent total disability, as recited in *Knisley*: to recover permanent total disability, "a [c]laimant must establish the extent, or percentage, of the permanent partial disability resulting from the last injury only, and prove that the combination of the last injury and the pre[]existing disabilities resulted in permanent total disability." *Knisley*, 211 S.W.3d at 635. However, Claimant's suggestion that *Knisley* holds a claimant does not have to prove the nature and extent of his or her preexisting disabilities is flawed.

_____

[9] Section 287.808 states the following:

> The burden of establishing any affirmative defense is on the employer. The burden of proving an entitlement to compensation under this chapter is on the employee or dependent. In asserting any claim or defense based on a factual proposition, the party asserting such claim or defense must establish that such proposition is more likely to be true than not.

[10] We note Claimant's second point relied on violates Rule 84.04. "A statement of a point relied on . . . violates Rule 84.04 when it groups together contentions not related to a single issue. As such, it is multifarious." *In re Marriage of Cochran*, 340 S.W.3d 638, 647 (Mo. App. S.D. 2011) (internal citation omitted). "Improper points relied on, including those that are multifarious, preserve nothing for appellate review." *Id.* However, "[a]s a matter of policy, the court prefers to decide cases on their merits whenever possible." *Comp & Soft, Inc. v. AT&T Corp.*, 252 S.W.3d 189, 194 (Mo. App. E.D. 2008). Because the deficiencies in Claimant's point relied on do not impede our ability to discern her arguments or our disposition on the merits, we review this point *ex gratia*. *O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 543 n.1 (Mo. App. E.D. 2015).

19

"When a claim is made against the Fund for permanent disability compensation, statutory language and case law make it mandatory that a claimant must provide evidence to support a finding, among other elements, that he [or she] had a preexisting permanent disability." *Portwood v. Treasurer of State of Missouri-Custodian of the Second Injury Fund*, 219 S.W.3d 289, 292 (Mo. App. W.D. 2007) (quoting *Messex v. Sachs Elec. Co.*, 989 S.W.2d 206, 214 (Mo. App. E.D. 1999)). *Knisley* did not alter this requirement. At issue in *Knisley* was whether a claimant with several preexisting permanent disabilities needed to distinguish among and assign separate percentages for each before she could prevail on a claim for permanent total disability. *Knisley*, 211 S.W.3d at 634-36. The court held § 287.220.1 contained no such requirement; therefore, a "[c]laimant *only needed to establish that she had preexisting permanent disabilities* that when combined with her [primary] injury rendered her permanently and totally disabled. *Id.* at 635 (emphasis added). A close reading of *Knisley* reveals the requirement that a claimant seeking benefits from the Fund must prove the nature and extent of her preexisting permanent disabilities remains constant.

Claimant's argument that the Commission improperly concluded she needed to prove the nature and extent of her preexisting permanent disabilities by a reasonable degree of certainty because that is the incorrect standard of proof also misses the mark. Under § 287.808, the claimant must prove an entitlement to compensation and must establish an asserted factual proposition is more likely to be true than not true. § 287.808. However, "[a] broader standard of review is applicable where . . . the permanency of an employee's disability is at issue." *Matzker v. St. Joseph Minerals Corp.*, 740 S.W.2d 362, 363 (Mo. App. E.D. 1987), overruled on other grounds by *Hampton*, 121 S.W.3d 220.

"Missouri courts have routinely required that the permanent nature of an injury be shown to a reasonable certainty." *Sanders v. St. Clair Corp.*, 943 S.W.2d 12, 16 (Mo. App. S.D. 1997) (citing *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703 (Mo. App. W.D. 1973), overruled on other grounds by *Hampton*, 121 S.W.3d 220. A close reading of our case law reveals the quantum of proof required when a claimant seeks to prove permanency of injury differs from when a claimant seeks to prove temporary injury or causation of injury. *See Downing v. Willamette Indus., Inc.*, 895 S.W.2d 650, 655 (Mo. App. W.D. 1995) (internal citations omitted) ("For an award of temporary disability and medical aid, proof of cause of injury is sufficiently made on reasonable probability, while proof of permanency of injury requires reasonable certainty.") and *Griggs*, 503 S.W.2d at 703 (internal citations omitted) ("While proof of a cause of injury is sufficiently made on reasonable probability, proof of permanency of injury requires reasonable certainty."). The requirement that the permanent nature of an injury be shown to a reasonable degree of certainty aligns with § 287.190.6(2), which defines "permanent partial disability" and provides that "[m]edical opinions addressing compensability and disability shall be stated within a reasonable degree of medical certainty." § 287.190.6(2).

Because Claimant alleges she has preexisting permanent partial disabilities, we find the Commission correctly found Claimant had to prove the nature and extent of those disabilities by a reasonable degree of certainty. The Commission did not err in stating Claimant's burden of proof.

*Nature and Extent of Claimant's Preexisting Permanent Psychiatric Disability*

While we find the Commission did not err in stating Claimant needed to prove the nature and extent of her preexisting permanent disabilities by a reasonable degree of certainty, we find the Commission erred in finding Claimant failed to meet her burden. The Commission reasoned

21

Claimant failed to meet her burden because "other than testifying very briefly about leaving her job after her daughter's death, going to a therapist twice, and receiving Ambien and Xanax from her primary care doctor, Claimant did not testify about any actual symptoms prior to her work accident."

The Commission's finding is not supported by sufficient competent evidence and is against the overwhelming weight of the evidence. The requirement of reasonable certainty does not mean absolute certainty, but rather something more than mere likelihood, conjecture, or probability. *Matzker*, 740 S.W.2d at 363 (citing *Garrison v. U.S. Cartridge Co.*, 197 S.W.2d 675, 677 (Mo. App. 1946), overruled on other grounds by *Hampton*, 121 S.W.3d 220. Permanency can be inferred from the whole evidence; evidence of permanency "need not necessarily be in express terms." *Davis v. Brezner*, 380 S.W.2d 523, 528 (Mo. App. 1964). As this Court has acknowledged, "[t]here is nothing talismanic about the phrase 'reasonable certainty.' The words a medical expert uses when testifying are important, not in themselves, but as a reflection of any doubts [he or] she may have about the permanence of the injury." *P.M. v. Metromedia Steakhouses Co., Inc.*, 931 S.W.2d 846, 849 (Mo. App. E.D. 1996).

Here, both psychiatric experts testified, to a reasonable degree of medical certainty, regarding their diagnoses of Claimant with preexisting permanent disabilities. Based upon his evaluation of Claimant and her medical records, Dr. Sky diagnosed Claimant with single episode major depression, anxiety disorder, post-concussive disorder, and alcohol abuse disorder in remission. Dr. Sky rated Claimant as having 25% permanent psychiatric disability that preexisted the accident and was "exacerbated" another 75% by the accident. Dr. Liss similarly diagnosed Claimant with PTSD and associated anxiety and depression that preexisted the accident. Dr. Liss opined the core of Claimant's PTSD, which included physiologic symptoms

of "startle, sleeplessness, anxiety, and panic," began with her daughter's murder and was "magnified" by the accident. Dr. Liss rated Claimant as having a 50% permanent psychiatric disability that preexisted the accident. Dr. Liss testified PTSD is neither treatable nor curable. Except for Dr. Sky's note that Claimant's alcohol abuse disorder is in remission, nowhere in their testimonies do Drs. Liss and Sky doubt the permanency of Claimant's preexisting disabilities.

The Commission was not free to arbitrarily disregard and ignore Dr. Liss' and Dr. Sky's testimony regarding Claimant's preexisting disabilities and base its finding "upon conjecture or its own mere personal opinion unsupported by sufficient competent evidence." *Lawrence*, 470 S.W.3d at 16 (citing *Lewis v. Kansas Univ. Med. Ctr.*, 356 S.W.3d 796, 800 (Mo. App. W.D. 2011)). Claimant's expert psychiatric testimony sufficiently establishes the nature and extent of her preexisting permanent psychiatric disabilities. The Commission's conclusion to the contrary appears to reflect its personal opinion that something other than the preexisting disabilities caused Claimant's decision to leave the workforce, attend therapy, and take prescription medications.

*Combination of Preexisting Disability and Primary Injury Resulting in Permanent Total Disability*

We also find the Commission erred in finding Claimant failed to prove the combination of her preexisting disabilities and primary injury rendered her permanently and totally disabled. The Commission found Claimant failed to meet her burden because of its perceived deficiencies in the expert testimony she presented. The Commission found Dr. Liss' and Dr. Sky's testimony was "not persuasive" because they did not (1) review any prior "psychiatric" treatment records or (2) separate the symptoms Claimant experienced before the accident from the symptoms Claimant experienced after the accident.

23

The Missouri Constitution and § 287.495.1 do not authorize us to substitute our own judgment on the evidence for that of the Commission. *Michler v. Krey Packing Co.*, 253 S.W.2d 136, 717 (Mo. banc 1952). However, they do authorize us "to decide whether the Commission could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence." *Id.* (internal citations omitted). *See also Porter v. RPCS, Inc.*, 402 S.W.3d 161, 171 (Mo. App. S.D. 2013). Although the Commissioners found the experts' testimonies were "not persuasive," there is no substantial basis in the evidence to support their finding.

This Court recognizes the Commission can properly find against a claimant on the ground the claimant did not meet his or her burden of proof regarding causation in a workers' compensation case. This Court further recognizes this is so even where the Fund presents no evidence at a hearing before an ALJ to contradict the claimant's evidence. *Seifner v. Treasurer of State-Custodian of Second Injury Fund*, 362 S.W.3d 59 (Mo. App. W.D. 2012) is one such case. In *Seifner*, the claimant injured his thoracic spine while working on his employer's production line. *Id.* at 61-62. He filed a claim against his employer and settled it before trial. *Id.* He also filed a claim against the Fund based on alleged preexisting disabilities he claimed resulted from the repetitive nature of his work on the production line. *Id.* At a hearing before an ALJ, the claimant offered the deposition testimony of one medical expert concluding the claimant's return to work after sustaining prior injuries was a substantial contributing factor in causing the pain he suffered. *Id.* The Fund offered no evidence. *Id.*

The ALJ denied the claimant's Fund claim, finding the medical expert's opinion regarding causation was not credible because he did not know several details related to the claimant's work, including how many days or hours per day the claimant worked on the

24

production line or how the claimant performed his production line duties. *Id.* at 63. The Commission affirmed and adopted the ALJ's findings. *Id.* The Western District affirmed. *Id.* at 67. Even though no contradictory medical evidence was introduced by the Fund, the Western District found the Commission identified a reasonable basis for concluding the claimant's medical expert lacked credibility regarding the causation of the claimant's injuries. *Id.* at 67. Because the Commission had impeached the factual basis of the claimant's medical expert's testimony, the court held the Commission did not err in denying the claimant's claim against the Fund. *Id.*

The present case is distinguishable from *Seifner* because the Commission identified no reasonable basis for discrediting Claimant's expert medical and vocational opinions and concluding their opinions lack credibility. The Commission disregarded Claimant's expert opinions in part because it found they reviewed no prior psychiatric treatment records in reaching their opinions. However, in its award, the Commission concedes the experts *did* review records from Claimant's primary care physician. Claimant also introduced her primary care physician's records into evidence. These records confirm Claimant suffered depression and anxiety, treated with medications, before the accident.

The Commission's award suggests Claimant needed to introduce records from medical specialists to meet her burden, however, we can find no case or statute that imposes such a requirement. *See* § 287.190.6(2) (requiring only that "permanent total disability shall be demonstrated and certified by a physician."). Because the Commission conceded Claimant's experts did review prior psychiatric treatment records from Claimant's primary care physician in reaching their opinions, we find the Commission's disregard of the experts on this ground cannot be credited. Thus, the Commission's finding that Claimant failed to prove her preexisting

25

disabilities combined with her primary injury to cause permanent total disability because her experts reviewed no prior treatment records is not supported by sufficient competent evidence and is against the overwhelming weight of the evidence.

In addition, the Commission disregarded Claimant's expert opinions because they did not separate the symptoms Claimant experienced before the accident from the symptoms Claimant experienced after the accident. The Commission's criticism of Claimant's experts in this regard reflects a narrow view of their testimonies. Dr. Sky testified the psychiatric symptoms of depression and anxiety Claimant experienced before and after the accident were similar but the accident "exacerbated" or "significantly worsened" those symptoms to the point she could no longer work after the accident. Similarly, Dr. Liss testified Claimant experienced symptoms of PTSD before the accident, the core of which began with her daughter's murder, but the accident "magnified" her symptoms. Dr. Liss testified that while there is an overlapping in the symptoms Claimant experienced, "new and exaggerated symptoms have occurred since the injury at work." He further testified that Claimant's preexisting PTSD "feed[s] on" her post-accident PTSD. Dr. Volarich testified that, in his thirty-four years of experience as a medical doctor, patients with depression have an "altered pain threshold." He testified "[t]hey perceive pain differently, more intensely, lasting longer periods of time, needing more medication, [and] more time for therapy to try to resolve or heal conditions." Dr. Volarich concluded Claimant experienced more pain than she otherwise would have upon sustaining her primary injury because of her preexisting disabilities.

The foregoing testimony in the record establishes Claimant experienced symptoms before and after the accident that differed not in kind but rather in degree. Because Claimant's experts testified regarding the differences in symptoms Claimant experienced before and after the

26

accident, we find the Commission's disregard of the experts on this ground cannot be credited. Therefore, the Commission's finding that Claimant failed to prove her preexisting disabilities combined with her primary injury to cause permanent total disability because her experts did not parse her preexisting symptoms from her post-accident symptoms is not supported by sufficient competent evidence and is against the overwhelming weight of the evidence.

Without a reasonable basis for discrediting Claimant's experts' opinions, the Commission failed to impeach their unanimous testimony that Claimant's preexisting disabilities combined with her primary injury to render her permanently and totally disabled on the record before us. Because we find the Commission arbitrarily disregarded and ignored the substantial and undisputed evidence offered by Claimant, its denial of Claimant's claim against the Fund is in error.

**Conclusion**

Viewing the award objectively and examining the evidence in the whole record, we conclude Claimant has met her burden under § 287.220 of establishing (1) that her preexisting permanent disabilities were serious enough to constitute a hindrance or obstacle to her employment or reemployment; (2) the nature and extent of her preexisting permanent disabilities by a reasonable degree of certainty; and (3) that she is permanently and totally disabled due to a combination of her preexisting permanent disabilities and her primary injury. We find the Fund is liable for her permanent total disability. The Commission's decision to the contrary is not supported by sufficient competent evidence and is against the overwhelming weight of the evidence.

We reverse the Commission's decision that the Fund is not liable for Claimant's permanent and total disability, and we remand with instructions for the Commission to enter an award consistent with the findings in this opinion.

_____
Philip M. Hess, Presiding Judge


Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.